DA 06-0304

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2007 MT 266

STATE OF MONTANA,

       Plaintiff and Appellee,

  v.

GARY CURTIS TENNELL,

       Defendant and Appellant.

APPEAL FROM:    District Court of the Twenty-First Judicial District,
In and For the County of Ravalli, Cause No. DC 05-043
Honorable Jeffrey H. Langton, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Jim Wheelis, Chief Appellate Defender, Helena, Montana

      For Appellee:

          Honorable Mike McGrath, Attorney General; Mark W. Mattioli,
Assistant Attorney General, Helena, Montana

          George H. Corn, County Attorney; William E. Fulbright,
Deputy County Attorney, Hamilton, Montana

Submitted on Briefs:   May 9, 2007

Decided:   October 22, 2007

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Appellant Gary Tennell (Tennell) was charged with one count of negligent homicide, in violation of § 45-5-104, MCA, and three counts of criminal endangerment, in violation of § 45-5-207, MCA. The charges arose after Tennell, while driving south on Highway 93, caused a fatal accident when he ran head-on into another vehicle after crossing into the oncoming lane of traffic. Tennell appeals his conviction by jury on all counts in the Twenty-First Judicial District Court, Ravalli County. We affirm.

¶2 Tennell raises the following issues on appeal:

¶3 1. Did defense counsel's withdrawal of his challenge for cause constitute record-based ineffective assistance of counsel, and if not, should the withdrawal be reviewed for plain error?

¶4 2. Did Tennell receive ineffective assistance of counsel when his trial counsel failed to object when the State, during closing argument, misstated the content of a witness's testimony and offered a personal opinion about Tennell's case?

¶5 3. Did trial counsel render ineffective assistance of counsel by failing to object to character evidence?

¶6 4. Did cumulative error render Tennell's trial unfair?

## FACTUAL AND PROCEDURAL BACKGROUND

¶7 In the early afternoon on February 2, 2005, Tennell was driving south on Highway 93 just south of Lolo, Montana, when he struck Alice Day's oncoming vehicle head-on. Prior to the collision, multiple witnesses observed Tennell driving erratically and dangerously for approximately ten miles, weaving in and out of traffic and passing

2

vehicles by using the center northbound lane. Witnesses reported that Tennell was driving too fast for the road conditions, which included travel at speeds of seventy or eighty miles per hour in a fifty-five mile per hour construction zone. Witnesses also noted that immediately prior to the accident Tennell did not appear to be aware of his surroundings, and in fact appeared to be slumped against the driver's door of his vehicle as he drove. Ultimately, after two oncoming motorists narrowly avoided colliding with Tennell, his vehicle struck Alice Day's vehicle, killing her. Tennell did not brake or take evasive action before the collision.

¶8 Montana Highway Patrol trooper Michael Bailey spoke with Tennell briefly at the scene of the accident, and also in the emergency room shortly thereafter. In both instances, Tennell stated that he had swerved to avoid hitting an animal in the roadway, but no witnesses saw any animals on or near the highway immediately prior to the collision. While Tennell made consistent, alert, and coherent statements shortly after the accident, he later stated that he had no recollection of driving from Missoula prior to the accident, of the accident itself, or of making any statements at the hospital. From a blood sample it was determined that Tennell had no alcohol in his system, and there was no evidence he had taken drugs or prescription medications.

¶9 A jury trial was held on August 29 and 30, and September 1, 2005. During voir dire proceedings, defense counsel questioned Juror McGowan regarding his history in law enforcement with the State of Alaska, and asked whether McGowan would be inclined towards believing the testimony of law enforcement over the testimony of the general public. Juror McGowan indicated that, if all else were equal and he needed to

break a tie between conflicting facts, he would side with law enforcement's version. Defense counsel moved to dismiss McGowan for cause, and the State objected. Defense counsel then continued questioning McGowan, and once again renewed its motion to dismiss him for cause. At that point, the District Court asked McGowan about his ability to apply the "beyond a reasonable doubt" standard, inquiring whether McGowan would be able to disagree with law enforcement if he felt the evidence warranted a different conclusion than law enforcement had reached. After McGowan agreed that he could do so, defense counsel withdrew his motion to challenge McGowan for cause, and ultimately used Tennell's sixth peremptory challenge to strike Juror McGowan.

¶10 Testimony at trial included that of psychiatrist Michael Silverglat, whom Tennell had consulted six months prior to the accident, seeking treatment for poor sleep and possible depression. At their initial appointment, Dr. Silverglat tentatively concluded that Tennell was suffering from sleep-disordered breathing. Dr. Silverglat recommended that Tennell undergo a polysomnogram to determine what might be wrong with his sleep, and suggested that Tennell do so soon because untreated sleep apnea could interfere with one's alertness and could cause other medical complications. Tennell did not take the sleep test until after the accident, at which time Dr. Silverglat diagnosed Tennell with severe obstructive sleep apnea.

¶11 During closing arguments, the prosecutor made the following remarks regarding Dr. Silverglat's testimony:

> Interestingly, you work in this sleepy idea in July of 2004, as Dr. Silverglat told us, he tells the Defendant, "There's a possibility you have a sleep breathing disorder," is the phrase he used.

4

And I said, "Well, I suppose you talked to him about what it means."

"Absolutely, I told him what it means. I told him the risks with it, the risk to his health, to the things around him, and urged him to get the tests so we could confirm it."

And what did the Defendant do? He blew it off. He absolutely blew it off. And now he wants you to let it excuse his gross conduct because he just didn't know wrong. He knew. And he knew darn well he should do something about it. Because that's exactly what Dr. Silverglat told him seven months before the crash.

Defense counsel did not object to these remarks during closing argument. Defense counsel also did not object when the prosecutor later stated that he did not "put any stock in" Tennell's sleep apnea defense.

¶12 The jury ultimately found Tennell guilty of one count of negligent homicide and three counts of criminal endangerment. On October 26, 2005, the District Court sentenced Tennell to concurrent ten-year terms in the custody of the Montana Department of Corrections, with six suspended and a recommendation that Tennell be considered for non-prison placement. Tennell appeals.

**STANDARD OF REVIEW**

¶13 Claims of ineffective assistance of counsel are mixed questions of law and fact which we review de novo. *State v. Morgan*, 2003 MT 193, ¶ 7, 316 Mont. 509, ¶ 7, 74 P.3d 1047, ¶ 7.

**DISCUSSION**

¶14 **Did defense counsel's withdrawal of his challenge for cause constitute record-based ineffective assistance of counsel, and if not, should the withdrawal be reviewed for plain error?**

¶15 Tennell argues that his trial counsel's withdrawal of a motion to challenge Juror McGowan for cause constituted ineffective assistance of counsel that, in concert with McGowan's statements, constituted structural error. According to Tennell, there was "no apparent tactical or strategic reason for withdrawing [the] challenge for cause" after McGowan indicated that he would give more weight to law enforcement's testimony if there was some dispute in the facts. Tennell also argues that even if his counsel's withdrawal of the challenge is deemed to be tactical and not record-based, this Court should review the District Court's failure to exclude Juror McGowan for plain error.

¶16 Both the Montana Constitution and the Sixth Amendment guarantee a person the right to effective assistance of counsel. When reviewing ineffective assistance of counsel claims, this Court applies the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2025 (1984). The burden is on the defendant to show that defense counsel's performance "fell short of the range of competence required of attorneys in criminal cases and that his counsel's deficient performance was prejudicial to his case." *State v. Hendricks*, 2003 MT 223, ¶ 6, 317 Mont. 177, ¶ 6, 75 P.3d 1268, ¶ 6. "There is a strong presumption with regard to the first prong of the *Strickland* test that trial counsel's performance was based on sound trial strategy and falls within the broad range of

6

reasonable professional conduct." *State v. Upshaw*, 2006 MT 341, ¶ 32, 335 Mont. 162, ¶ 32, 153 P.3d 579, ¶ 32 (citing *Hendricks*, ¶ 7).

¶17    However, before reaching the merits of an ineffective assistance claim we must first determine whether the claim is properly before the Court or instead should be raised in a petition for post-conviction relief. *Upshaw*, ¶ 33. "The test to determine if an ineffective assistance claim is properly brought on direct appeal is whether the record contains the answer as to 'why' counsel took, or failed to take, action in providing a defense." *Upshaw*, ¶ 34 (citation omitted). If the record does not document allegations of ineffective assistance of counsel, the claim must be pursued in a petition for post-conviction relief. *Hagen v. State*, 1999 MT 8, ¶ 12, 293 Mont. 60, ¶ 12, 973 P.2d 233, ¶ 12. Regarding challenges for cause, we have said that "it is a mistake to assume that we can determine from a cold record whether there was a tactical reason for not exercising a challenge [for cause]. The reasons for counsel's actions or inactions should not be 'assumed' but should be the subject of a postconviction evidentiary inquiry." *State v. Hermann*, 2003 MT 149, ¶ 30, 316 Mont. 198, ¶ 30, 70 P.3d 738, ¶ 30.

¶18    Here, the record is silent as to "why" Tennell's counsel withdrew his challenge for cause of Juror McGowan. The State offers and we can conceive of plausible reasons for counsel's decision to withdraw the challenge, but the record does not reveal the basis for that decision. Therefore, Tennell's complaint is not record-based and is inappropriate for consideration on direct appeal.

¶19    Tennell alternatively argues that we should nonetheless undertake review of this issue by the common law "plain error" doctrine. Tennell offers a very brief argument in

support of this position and does not set forth how our failure to review the claimed error "may result in a manifest miscarriage of justice, may leave unsettled the question of the fundamental fairness of the trial or proceedings, or may compromise the integrity of the judicial process." *State v. Godfrey*, 2004 MT 197, ¶ 22, 322 Mont. 254, ¶ 22, 95 P.3d 166, ¶ 22 (citation omitted). However, because we do not know from the record whether the withdrawal of the challenge was error, given the possible tactical reasons for the withdrawal, we cannot undertake review of the issue by the plain error doctrine. *Godfrey*, ¶ 38 ("A fundamental aspect of 'plain error,' is that the alleged error indeed must be 'plain.'"). Consequently, we dismiss Tennell's claim of ineffective assistance of counsel without prejudice to raising the claim in post-conviction relief proceedings.

¶20 **Did Tennell receive ineffective assistance of counsel when his trial counsel failed to object when the State, during closing argument, misstated the content of a witness's testimony and offered a personal opinion about Tennell's case?**

¶21 Tennell argues that statements by the prosecutor, Mr. Fulbright, during closing argument amounted to misconduct, and that defense counsel rendered ineffective assistance of counsel by failing to object. Tennell also argues that Mr. Fulbright's statement that he did not "put any stock in" Tennell's sleep apnea theory was an impermissible expression of personal opinion about Tennell's credibility.

¶22 The testimony from Dr. Silverglat at trial indicated that he had urged Tennell to undergo a polysomnogram in order to diagnose what Dr. Silverglat initially suspected was Tennell's sleep disorder. Dr. Silverglat explained to Tennell that a person with sleep apnea could have trouble focusing, and that untreated sleep apnea could cause medical

8

complications. However, Mr. Fulbright's closing argument inferred that Tennell "knew" from his visit to Dr. Silverglat that he was a risk to himself and his surroundings if he did not take the sleep test. Tennell offers that, "under this version of what Dr. Silverglat said, [the jury] would be left with the impression that Tennell had received a specific warning about driving, about danger to those around him, and about unexpectedly falling asleep."

¶23 We agree that Mr. Fulbright's statements subtly exaggerated the content of Dr. Silverglat's warnings to Tennell, and further, that Mr. Fulbright offered a brief personal opinion about Tennell's credibility when he stated "I don't put any stock in" Tennell's theory. These comments were improper, and we admonish prosecutors to avoid such statements in the fulfillment of their duty to prosecute with honesty and integrity and in accordance with ethical obligations.

¶24 Although these statements were improper, we cannot conclude that they rose to a level of egregiousness that prejudiced Tennell or rendered the trial unfair. Dr. Silverglat did indeed warn Tennell about possible consequences of his condition, and argument in that regard was appropriate. Mr. Fulbright's opinion comment was briefly made in passing. We conclude, therefore, that any error by defense counsel in failing to object to the State's closing argument was ultimately harmless, and we affirm on this issue.

¶25 **Did trial counsel render ineffective assistance of counsel by failing to object to character evidence?**

¶26 Tennell argues that his trial counsel should have objected when the State presented evidence of Tennell's erratic and aggressive driving leading up to the collision. According to Tennell, his aggressive driving—in which he was constantly weaving in

9

and out of other vehicles at speeds well in excess of the posted limit—occurred ten miles before the accident and was "logically and temporally separate from the collision." The State responds that witnesses observed Tennell drive erratically for the entire ten miles, not merely ten miles prior to the accident.

¶27   Tennell uses the term "character evidence" in his statement of issues, but thereafter fails to cite this Court to any authority regarding the introduction of improper character evidence and its application herein. Rather, Tennell argues the evidence of erratic driving was "irrelevant." However, the events preceding the accident were clearly relevant and an objection on this basis would have been groundless. Tennell was charged with negligent homicide and criminal endangerment after he crossed into the lane of oncoming traffic and struck a motorist head-on, killing her. Contrary to Tennell's argument, the fact that he had been driving erratically and aggressively for ten miles prior to the collision cannot be said to be "logically and temporally separate from the collision." Rather, the opposite is true, as such evidence was closely related to the charged offenses and explanatory of the circumstances surrounding those offenses.

¶28   Because we hold that evidence of Tennell's erratic driving prior to the accident was relevant, defense counsel had no reason to object to its introduction on this ground, and Tennell thus did not receive ineffective assistance of counsel for his counsel's failure to so object.

¶29   **Did cumulative error render Tennell's trial unfair?**

¶30 Tennell argues that an amalgam of errors he has identified warrants reversal, even if no single error does. In support of this argument, Tennell reiterates his primary contentions under each of the issues discussed above.

¶31 "The doctrine of cumulative error requires reversal of a conviction where a number of errors, taken together, prejudiced a defendant's right to a fair trial." *State v. Ferguson*, 2005 MT 343, ¶ 126, 330 Mont. 103, ¶ 126, 126 P.3d 463, ¶ 126 (citations omitted). The defendant must establish prejudice; mere allegations of error are inadequate to satisfy the doctrine. *Ferguson*, ¶ 126 (citation omitted).

¶32 We conclude that any error identified herein was not sufficient to reverse on the doctrine of cumulative error.

¶33 Affirmed.

/S/ JIM RICE

We concur:

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ JOHN WARNER
/S/ BRIAN MORRIS