05-128

IN THE SUPREME COURT OF THE STATE OF MONTANA

2008 MT 140

KENNETH LEROY WHITLOW,

       Petitioner and Appellant,

  v.

STATE OF MONTANA,

       Respondent and Appellee.

APPEAL FROM:    District Court of the Twenty-First Judicial District,
In and For the County of Ravalli, Cause No. DC-1993-077
Honorable Jeffrey H. Langton, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Jeffrey T. Renz, Attorney at Law, Jason Lazark, Intern, Criminal Defense
Clinic, University of Montana School of Law, Missoula, Montana

      For Appellee:

          Hon. Mike McGrath, Montana Attorney General, Micheal S. Wellenstein,
Assistant Attorney General, Helena, Montana

Submitted on Briefs:  February 23, 2006

Decided:  April 22, 2008

Filed:

_____
Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1 Kenneth Leroy Whitlow appeals from the order of the District Court for the Twenty-First Judicial District, Ravalli County, denying his petition for postconviction relief. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2 On August 18, 1993, the State charged Whitlow, by Information, with one felony count of aggravated kidnapping, in violation of § 45-5-303, MCA, and one felony count of sexual intercourse without consent, in violation of § 45-5-503, MCA. These charges stemmed from the July 8, 1993 kidnapping of a six-year-old girl in Pinesdale, Montana. Additional facts underlying these charges, but not pertinent to the instant appeal, are set out in *State v. Whitlow*, 285 Mont 430, 949 P.2d 239 (1997) ("*Whitlow I*"). The matter proceeded to trial on January 24, 1994, lasting six days, and the jury found Whitlow guilty on both counts. The District Court sentenced Whitlow to forty years on the count of sexual intercourse without consent, ten years on the count of aggravated kidnapping, ten years under § 46-18-221, MCA, for the use of a weapon in the commission of an offense, and an additional sixty years on the aggravated kidnapping sentence after finding Whitlow to be a persistent felony offender. Whitlow filed a direct appeal to this Court raising several issues. We denied Whitlow's claims and affirmed his conviction in *Whitlow I*.

¶3 Subsequently, Whitlow filed a petition for postconviction relief with the District Court on March 17, 1999. Whitlow asserted that his trial counsel, James G. Shockley, had failed during voir dire to determine whether two jurors, J.B. and E.F., were biased

2

against Whitlow. Whitlow claimed that J.B. and E.F. demonstrated bias against him based on answers they gave to the prosecutor's voir dire questions and that Shockley, therefore, should have asked them follow-up questions. Whitlow argued that Shockley rendered ineffective assistance of counsel by failing to investigate this bias. In support of Whitlow's petition, Shockley provided an affidavit which stated, in pertinent part:

> 3. I can recall no particular tactical reason for not questioning Jurors . . . [J.B.], or [E.F.] about the matters referred to in Mr. Whitlow's Petition and cannot recall anyway that this failure was part of my trial strategy.
> 4. I also do not recall exercising any particular tactical decision when I did not excuse any of these [two] jurors for cause or exercise peremptory challenges in order to excuse them from the trial jury. At the time I obviously thought that they were not biased, but after reading the draft of the Memorandum of the Petitioner it appears that I should have asked more questions.
> 5. I do remember tactical reasons for seating some jurors, but the aforementioned jurors are not among them.

¶4 The State filed a motion to dismiss, arguing that Whitlow's petition was barred under § 46-21-105(2), MCA, as Whitlow could have raised his claims on direct appeal. The District Court granted the State's motion, and we reversed. *See State v. Whitlow*, 2001 MT 208, 306 Mont. 339, 33 P.3d 877 ("*Whitlow II*"). We held that Whitlow's ineffective assistance of counsel claim "could not have reasonably been raised on direct appeal because his allegations of ineffectiveness cannot be documented from the record in the underlying case." *Whitlow II*, ¶ 22. We observed that "in order to establish that his trial counsel's decision not to question or challenge prospective jurors was not the product of sound trial strategy, Whitlow would have to go beyond the trial record." *Whitlow II*, ¶ 21. Accordingly, we remanded Whitlow's ineffective assistance of counsel claim.

3

¶5 On May 9, 2002, the District Court held an evidentiary hearing on Whitlow's ineffective assistance of counsel claim. Shockley was the only witness called. The parties also introduced a number of exhibits at the hearing, including Shockley's voir dire notes, Shockley's billing records for the case, Shockley's affidavit in support of Whitlow's postconviction relief petition, and several letters from Shockley addressed to various persons discussing possible grounds for relief on direct appeal and in postconviction proceedings.[1] After receiving post-hearing briefing from both parties, the District Court issued its Opinion and Order on December 30, 2004, denying Whitlow's petition for postconviction relief. The court concluded that Whitlow had failed to establish that Shockley's conduct during voir dire fell below an objective standard of reasonableness in regard to jurors J.B. and E.F. Accordingly, the court denied his petition. This appeal followed.

¶6 Further facts are set forth below where relevant.

## ISSUES

¶7 The issues on appeal are as follows:

1. Did Shockley render ineffective assistance of counsel during jury selection by failing to ask follow-up questions of J.B. and E.F.?

2. Does an error by defense counsel during jury selection concerning the impartiality of a juror constitute structural error?

¶8 Because we conclude that Issue 1 is dispositive, we do not address Issue 2.

---

[1] The recipients of Shockley's letters included Whitlow's appellate counsel in *Whitlow I*, Whitlow's appellate counsel for *Whitlow II* and the postconviction relief proceedings, and Whitlow himself.

## STANDARD OF REVIEW

¶9 This Court reviews a district court's denial of a postconviction relief petition to determine whether the district court's findings of fact are clearly erroneous and whether its conclusions of law are correct. *Hartinger v. State*, 2007 MT 141, ¶ 19, 337 Mont. 432, ¶ 19, 162 P.3d 95, ¶ 19. Ineffective assistance of counsel claims, however, constitute mixed questions of law and fact for which our review is de novo. *State v. Racz*, 2007 MT 244, ¶ 13, 339 Mont. 218, ¶ 13, 168 P.3d 685, ¶ 13.

## DISCUSSION

¶10 The right to counsel in criminal prosecutions is guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and by Article II, Section 24 of the Montana Constitution. In order to analyze ineffective assistance of counsel claims, we have adopted the two-part test articulated by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984):

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064. In short, a defendant must prove (1) that counsel's performance was deficient, and (2) that counsel's deficient performance prejudiced the defense. *Racz*, ¶ 22.

¶11 A defendant must satisfy both prongs of this test in order to prevail on an ineffective assistance of counsel claim. *Adams v. State*, 2007 MT 35, ¶ 22, 336 Mont. 63,

5

¶ 22, 153 P.3d 601, ¶ 22. Thus, if an insufficient showing is made regarding one prong of the test, there is no need to address the other prong. *Adams*, ¶ 22; *see also Strickland*, 466 U.S. at 697, 104 S. Ct. at 2069 ("[T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one."). In the case at hand, we conclude that Whitlow has made an insufficient showing on the first prong (the performance inquiry); thus, that prong is dispositive and renders an inquiry into the question of prejudice unnecessary.

¶12 Before addressing the merits of the parties' arguments, it is necessary, as a preliminary matter, to clarify the proper standard for evaluating defense counsel's performance. Whitlow suggests that we must determine whether defense counsel acted out of ignorance or neglect. *See e.g. State v. Hendricks*, 2003 MT 223, ¶ 7, 317 Mont. 177, ¶ 7, 75 P.3d 1268, ¶ 7 ("In order to constitute ineffective assistance, counsel's conduct must flow from ignorance or neglect rather than from strategic decisions and trial tactics."); *see also Bone v. State*, 284 Mont. 293, 303, 944 P.2d 734, 740 (1997) ("Non-strategic decisions . . . that stem from neglect or ignorance, are accorded no deference.") (alteration, citation, and internal quotation marks omitted)). The State, on the other hand, suggests that we must determine whether counsel's performance was objectively reasonable. *See e.g. State v. St. Germain*, 2007 MT 28, ¶ 33, 336 Mont. 17, ¶ 33, 153 P.3d 591, ¶ 33 ("The defendant bears the burden to show that his counsel's performance fell below an objective standard of reasonableness."). The District Court applied this

6

latter standard. For the reasons which follow, we agree with the State that the proper measure of counsel's performance is objective reasonableness.

¶13 We first articulated the "ignorance or neglect" test in *State v. Morigeau*, 202 Mont. 36, 656 P.2d 185 (1982), stating that "[t]o sustain a claim of ineffective assistance, a criminal defendant must show that the error allegedly committed by his lawyer resulted in prejudice to him and stemmed from neglect or ignorance rather than from informed, professional deliberation." *Morigeau*, 202 Mont. at 44, 656 P.2d at 189 (italics omitted) (citing *United States v. Bosch*, 584 F.2d 1113, 1121 (1st Cir. 1978), in turn citing *Marzullo v. Maryland*, 561 F.2d 540, 544 (4th Cir. 1977)); *accord State v. Hall*, 203 Mont. 528, 539, 662 P.2d 1306, 1311 (1983); *State v. Henricks*, 206 Mont. 469, 476, 672 P.2d 20, 24-25 (1983). However, about a year and a half after we decided *Morigeau*, the Supreme Court issued its decision in *Strickland*, wherein the Court articulated a reasonableness approach. Soon thereafter, we adopted *Strickland*'s two-part test. *See State v. Boyer*, 215 Mont. 143, 147, 695 P.2d 829, 831 (1985); *State v. Grant*, 217 Mont. 357, 360, 704 P.2d 1064, 1065-66 (1985). Yet, in so doing, we did not address the continued vitality of the "ignorance or neglect" test previously articulated in *Morigeau*. As a result, this test has been repeated in a number of subsequent cases.[2]

---

[2] *See e.g. State v. Robbins*, 218 Mont. 107, 113, 708 P.2d 227, 231 (1985); *State v. Long*, 223 Mont. 502, 511, 726 P.2d 1364, 1370 (1986); *State v. Cleland*, 246 Mont. 165, 172, 803 P.2d 1093, 1097 (1990); *State v. Paulson*, 250 Mont. 32, 44-45, 817 P.2d 1137, 1144-45 (1991); *State v. Leyba*, 276 Mont. 45, 49, 915 P.2d 794, 796 (1996); *State v. Gonzales*, 278 Mont. 525, 532, 926 P.2d 705, 710 (1996); *Hans v. State*, 283 Mont. 379, 392, 942 P.2d 674, 682 (1997); *State v. Aliff*, 2001 MT 52, ¶ 13, 304 Mont. 310, ¶ 13, 21 P.3d 624, ¶ 13; *State v. Rogers*, 2001 MT 165, ¶ 9, 306 Mont. 130, ¶ 9, 32 P.3d 724, ¶ 9; *State v. Thee*, 2001 MT 294, ¶ 8, 307 Mont. 450, ¶ 8, 37 P.3d 741, ¶ 8; *State v. Audet*, 2004 MT 224, ¶ 11, 322 Mont. 415, ¶ 11, 96 P.3d 1144, ¶ 11; *Hartinger v. State*, 2007 MT 141, ¶ 21, 337 Mont. 432, ¶ 21, 162 P.3d 95, ¶ 21; *State v. Vaughn*,

¶14 In explaining the first prong of the two-part test adopted in *Strickland*—namely, whether counsel's performance was deficient—the Supreme Court stated that "[w]hen a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687-88, 104 S. Ct. at 2064. In other words, "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688, 104 S. Ct. at 2065. The Supreme Court stated that "[m]ore specific guidelines are not appropriate" and that there is no "checklist" for judicial evaluation of attorney performance. Rather, in any case presenting an ineffectiveness claim, the performance inquiry must be "whether counsel's assistance was reasonable considering all the circumstances." *Strickland*, 466 U.S. at 688, 104 S. Ct. at 2064, 2065.

¶15 Furthermore, the Supreme Court cautioned that in scrutinizing counsel's performance, every effort must be made "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065. The reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," and the defendant "must overcome the presumption that, under the circumstances, the challenged action

---

2007 MT 164, ¶ 29, 338 Mont. 97, ¶ 29, 164 P.3d 873, ¶ 29; *Adgerson v. State*, 2007 MT 336, ¶ 18, 340 Mont. 242, ¶ 18, 174 P.3d 475, ¶ 18.

might be considered sound trial strategy." *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065 (internal quotation marks omitted).

¶16    Summarizing the pertinent inquiry under the first prong, the Supreme Court stated as follows:

> [A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. *The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance.* In making that determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case.

*Strickland*, 466 U.S. at 690, 104 S. Ct. at 2066 (emphasis added).

¶17    The "ignorance or neglect" test is not consistent with this objectively-reasonable-under-the-circumstances inquiry. The Supreme Court indicated that the pertinent distinction is between reasonable and unreasonable professional judgment or, stated differently, between conduct which falls within the wide range of reasonable professional assistance and conduct which falls outside that range. The "ignorance or neglect" test, however, contemplates a compartmentalization of counsel's challenged acts and omissions as either strategic decisions/trial tactics on one hand or ignorance/neglect on the other. Such categorizing does not facilitate a meaningful evaluation of conduct that lies somewhere between "strategic/tactical" and "ignorant/neglectful." Moreover, this approach affords little insight into whether counsel's conduct was "reasonable" under then-existing circumstances and prevailing professional norms. Indeed, the premise

9

underlying the "ignorance or neglect" test—namely, that categorizing counsel's conduct as either strategic/tactical or ignorant/neglectful determines whether the defendant received constitutionally effective representation—is mistaken.

¶18    In this regard, it is noteworthy that the court in *Marzullo* (from which our "ignorance or neglect" test derives[3]) acknowledged that "[s]ometimes, the denial of effective assistance of counsel does not result from neglect, ignorance, or any other fault of defense counsel.  For example, a trial court may deprive an accused of effective representation by making a tardy appointment of counsel."  *Marzullo*, 561 F.2d at 544 n. 8.  Furthermore, the fact that counsel's challenged conduct may be categorized as "strategic" or "tactical" does not necessarily mean that the conduct was objectively reasonable.  For example, the Supreme Court observed in *Strickland* that

> strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable *precisely to the extent that reasonable professional judgments support the limitations on investigation*.  In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.

*Strickland*, 466 U.S. at 690-91, 104 S. Ct. at 2066 (emphasis added).  It is possible, therefore, for a strategic choice to be unreasonable—e.g., because it was made after less than complete investigation, and prevailing professional norms would have required further investigation.  *See also e.g. Lawhorn v. Allen*, ___ F.3d ___, ___, 2008 WL 638596 at *17, 2008 U.S. App. LEXIS 5159 at *63 (11th Cir. March 11, 2008) ("Tactical

---

[3] *See Morigeau*, 202 Mont. at 44, 656 P.2d at 189 (citing *Bosch*, 584 F.2d at 1121, in turn citing *Marzullo*, 561 F.2d at 544).

or strategic decisions based on a misunderstanding of the law are unreasonable.").[4]

Along these same lines, the fact that counsel's challenged conduct was based on incomplete information does not mean that the conduct was per se unreasonable. *Cf. Strickland*, 466 U.S. at 691, 104 S. Ct. at 2066 ("[W]hen a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable.").

¶19    The point is that rigid categorization of counsel's performance as strategic/tactical or ignorant/neglectful is not an adequate measure of that performance. The question is not merely whether counsel's conduct flowed from strategic decisions and trial tactics but, rather, whether it was based on "reasonable" or "sound" professional judgment. *See e.g. Massaro v. United States*, 538 U.S. 500, 505, 123 S. Ct. 1690, 1694 (2003); *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065; *see also Jones v. Wood*, 114 F.3d 1002,

---

[4] For this reason, it is necessary to address our prior statements that defense counsel's trial tactics and strategic decisions "cannot be the basis upon which to find ineffective assistance of counsel." *See e.g. Hans*, 283 Mont. at 392, 942 P.2d at 682; *Bone*, 284 Mont. at 303, 944 P.2d at 740; *State v. Niederklopfer*, 2000 MT 187, ¶ 19, 300 Mont. 397, ¶ 19, 6 P.3d 448, ¶ 19; *State v. Whitlow*, 2001 MT 208, ¶ 17, 306 Mont. 339, ¶ 17, 33 P.3d 877, ¶ 17; *State v. Thee*, 2001 MT 294, ¶ 8, 307 Mont. 450, ¶ 8, 37 P.3d 741, ¶ 8; *State v. Grixti*, 2005 MT 296, ¶ 25, 329 Mont. 330, ¶ 25, 124 P.3d 177, ¶ 25; *State v. Worthan*, 2006 MT 147, ¶ 21, 332 Mont. 401, ¶ 21, 138 P.3d 805, ¶ 21; *State v. Auld*, 2006 MT 189, ¶ 21, 333 Mont. 125, ¶ 21, 142 P.3d 753, ¶ 21; *State v. Vaughn*, 2007 MT 164, ¶ 29, 338 Mont. 97, ¶ 29, 164 P.3d 873, ¶ 29; *Adgerson v. State*, 2007 MT 336, ¶ 18, 340 Mont. 242, ¶ 18, 174 P.3d 475, ¶ 18; *Notti v. State*, 2008 MT 20, ¶¶ 10, 17, 341 Mont. 183, ¶¶ 10, 17, 176 P.3d 1040, ¶¶ 10, 17. As *Strickland* makes clear, the issue is not whether counsel's challenged conduct may be characterized as "strategic" or "tactical"; rather, it is whether that conduct—strategic, tactical, or otherwise—was "reasonable" under prevailing professional norms and in light of surrounding circumstances. Accordingly, to the extent our cases may be read as precluding an ineffective assistance of counsel claim predicated on trial tactics and strategic decisions that were objectively unreasonable, those cases conflict with *Strickland* and, therefore, are overruled on this particular point.

1010 (9th Cir. 1997) ("Even if [counsel's] decision could be considered one of strategy, that does not render it immune from attack—it must be a *reasonable* strategy."); *State v. Harris*, 2001 MT 231, ¶ 22, 306 Mont. 525, ¶ 22, 36 P.3d 372, ¶ 22 ("When a tactical or strategic reason for defense counsel's alleged deficient performance is apparent in the record on appeal or proffered by counsel in post-conviction proceedings, the court must evaluate whether this underlying reason is 'reasonable' . . . ."). The "ignorance or neglect" test does not facilitate such analysis, as it is detached from the relevant benchmark by which counsel's conduct must be judged (prevailing professional norms) and the necessity of evaluating the reasonableness of that conduct in light of the surrounding circumstances.

¶20    For these reasons, we conclude that the reasonableness standard articulated in *Strickland* is the superior and correct approach for evaluating counsel's performance, and we reaffirm our cases which recognize that approach.[5] *See e.g. State v. St. Germain*, 2007 MT 28, ¶ 33, 336 Mont. 17, ¶ 33, 153 P.3d 591, ¶ 33; *State v. Meza*, 2006 MT 210, ¶ 27, 333 Mont. 305, ¶ 27, 143 P.3d 422, ¶ 27; *State v. Jefferson*, 2003 MT 90, ¶¶ 43, 48, 315 Mont. 146, ¶¶ 43, 48, 69 P.3d 641, ¶¶ 43, 48; *State v. Hanson*, 283 Mont. 316, 327, 940 P.2d 1166, 1173-74 (1997); *State v. Denny*, 262 Mont. 248, 252-53, 865 P.2d 226, 228-29 (1993). The pertinent inquiry, therefore, is not simply whether counsel's conduct

---

[5] Notably, although we have found many pre-*Strickland* decisions from the United States Courts of Appeals mentioning the ignorance or neglect test, *see e.g. United States v. Leifried*, 732 F.2d 388, 390 (4th Cir. 1984); *United States v. Weston*, 708 F.2d 302, 307 (7th Cir. 1983); *Cepulonis v. Ponte*, 699 F.2d 573, 575 (1st Cir. 1983); *United States v. Hinton*, 631 F.2d 769, 780 n. 32 (D.C. Cir. 1980), we have found only one post-*Strickland* decision from these courts mentioning the test, *see Barrett v. United States*, 965 F.2d 1184, 1193 (1st Cir. 1992), and that decision rested on the defendant's failure properly to allege deficient performance, *see Barrett*, 965 F.2d at 1193.

12

flowed from ignorance or neglect—though this is certainly a relevant consideration in the analysis, *see e.g. Williams v. Taylor*, 529 U.S. 362, 395, 120 S. Ct. 1495, 1514 (2000) (observing that trial counsel's representation fell short of professional standards because counsel failed to conduct a thorough investigation of the defendant's background, not because of any strategic calculation, but because counsel incorrectly thought that state law barred access to the relevant records). Rather, the question which must be answered is whether counsel's conduct fell below an objective standard of reasonableness measured under prevailing professional norms and in light of the surrounding circumstances. We overrule *Morigeau* and its progeny to the extent those cases hold that the measure of counsel's conduct is whether it stemmed from ignorance or neglect. *See* ¶ 13 n. 2.

¶21 In addition, we emphasize the point made in *Strickland* and noted in a number of our own cases that a reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and the defendant "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065 (internal quotation marks omitted); *see also State v. Hamilton*, 2007 MT 223, ¶ 16, 339 Mont. 92, ¶ 16, 167 P.3d 906, ¶ 16 ("There is a strong presumption with regard to the first prong of the *Strickland* test that trial counsel's performance was based on sound trial strategy and falls within the broad range of reasonable professional conduct."); *accord State v. Tennell*, 2007 MT 266, ¶ 16, 339 Mont. 381, ¶ 16, 170 P.3d 965, ¶ 16; *State v. Olsen*, 2004 MT 158, ¶ 15, 322 Mont. 1, ¶ 15, 92 P.3d 1204, ¶ 15;

13

*State v. Hendricks*, 2003 MT 223, ¶ 7, 317 Mont. 177, ¶ 7, 75 P.3d 1268, ¶ 7. The strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance and was based on sound trial strategy still remains. This presumption likewise undergirds the long-standing appellate standard that a petitioner seeking to reverse a district court's denial of a petition for postconviction relief based on a claim of ineffective assistance of counsel bears "a heavy burden." *See Brown v. State*, 277 Mont. 430, 434, 922 P.2d 1146, 1148 (1996); *Schaff v. State*, 2003 MT 187, ¶ 18, 316 Mont. 453, ¶ 18, 73 P.3d 806, ¶ 18.

¶22 With these principles in mind, we now turn to the question of whether Shockley rendered deficient performance during voir dire by failing to ask follow-up questions of jurors J.B. and E.F. Whitlow's specific contentions as to J.B. and E.F. will be considered in turn.

**A. Juror J.B.**

¶23 During voir dire questioning by the prosecutor, the following exchange occurred between J.B. and the prosecutor, George Corn:

> [J.B.]: . . . When you were asking me if I could be impartial, I'm going to try to be impartial, but one of my daughters goes with one of my [sic] boys out of Pinesdale, so I have heard about this.
> MR. CORN: Do you realize that what you might have heard, [J.B.], is not evidence in thi[s] case?
> [J.B.]: Right, right.
> MR. CORN: Thank you.
> [J.B.]: And I have read everything that they put [in] the paper. I just don't know how partial -- you know --
> MR. CORN: And you have to tell me and make that decision yourself. If the Judge instructs --
> [J.B.]: I'll try.
> MR. CORN: -- you under oath?

> [J.B.]: I do have three little girls, so it's hard to be impartial.
>
> MR. CORN: All right. Well, I'm going to let you wrestle with that.
>
> [J.B.], have you heard the questions that I have asked of the other jurors?
>
> [J.B.]: I have.
>
> MR. CORN: Is there anything I touched upon -- and I've been over a fair amount of material -- but unless there's something specific -- or was there anything that I touched upon that you need to discuss with me at this point?
>
> [J.B.]: No, I read it when it happened, that's the last I heard of it.
>
> MR. CORN: Have you -- Based on what you read, is there anything that you read about that that would prevent you from reserving judgment in this case?
>
> [J.B.]: No.

The prosecutor also asked J.B. several other isolated questions about previous jury duty, whether J.B. knew any of the witnesses, and the burden of proof in the case.

¶24 After the prosecutor completed his voir dire questioning of the potential jurors, Shockley began his questioning and asked the potential jurors a series of four questions dealing with sexual abuse, mental health treatment and association with the mental health profession, and whether any of the potential jurors were aware of anything else about the case that might prejudice them against Whitlow. Out of respect for the sensitive nature of the questions, Shockley then conducted individual interviews (in the judge's chambers) of each juror who responded affirmatively to any of the questions. J.B. was among the jurors who replied affirmatively to one of Shockley's questions, and Shockley proceeded to question J.B. in the judge's chambers as follows:

> THE COURT: [J.B.], which of those questions applied to you?
>
> [J.B.]: The mental health professional. I went through a divorce, and for a reality check, I went in twice, and my daughter went in twice. My son and I had a little trouble; he had an anger problem and went back to live with his mother, and before he could come home, he had to go see a professional to get his anger under control, went in about five or six times.

15

MR. SHOCKLEY: It happens.

[J.B.]: Yeah. Well, good enough, so the Marine Corps will let him in in five more months.

MR. SHOCKLEY: I spent 25 years in the Marine Corps. I don't know that that's that high of a standard.

[J.B.]: Got him straightened out just in time.

MR. CORN: I don't have any more questions.

THE COURT: Anything about any of those experiences that would tend to make you regard testimony from a psychologist or therapist differently than anyone else?

[J.B.]: No. More of a listening session for him than anything else. There was no real direction. They just felt that if he needed to talk, to come on back.

MR. SHOCKLEY: The magic question is -- I think it's magic -- would you give more credence to a psychologist because he's an expert witness than you would to a regular witness?

[J.B.]: I guess I'd have to hear the testimony.

MR. SHOCKLEY: But just because they're a psychologist, are they more believable than a guy off the street?

[J.B.]: I don't think so.

MR. SHOCKLEY: Okay, that's good enough for me.

Towards the end of voir dire, Shockley asked the jury pool, "Is there anyone here that doesn't think they can be objective, and their emotions are just too great about this issue to give Mr. Whitlow a fair trial?" None of the jurors, including J.B., replied affirmatively to this question.

¶25    At the postconviction evidentiary hearing, Shockley stated that he thought mentioning to J.B. that he (Shockley) had been in the Marine Corps might be a plus and that it was a good trial tactic to ingratiate himself with J.B. In addition, Shockley testified that he had received and reviewed the jury questionnaires prior to the jury selection process. Shockley explained, in reference to his review of the questionnaires, "What I would want to do is get people who are likely to be open-minded and receptive to my evidence and hopefully inclined towards my client." Shockley also stated that as a

16

general rule, he would observe jurors' body language, tone of voice, and general demeanor during the opposing counsel's questioning of the jury pool. Shockley testified that he almost certainly did this during Whitlow's trial.

¶26  Shockley also prepared voir dire notes in which he made comments on each of the jurors, including information about children, profession, or general demeanor. Shockley testified that it was his practice to review the juror questionnaires and then make notes on each juror before he went to court. Shockley further testified that he added additional notes on the sheet during voir dire. With respect to Whitlow's trial specifically, Shockley wrote, in the left-hand margin of the notes, comments about each of the jurors, including "like," "no," "not like," "bad," "good," "a lot like," and other similar comments. Several of these comments were underlined up to three or four times for emphasis. Most, but not all of the jurors received such comments. Shockley stated that he believed he wrote these comments during voir dire. For J.B., Shockley wrote the comments "No kids," "Been Juror," "Slight hear [sic] Problem." Shockley also wrote under a second entry for J.B. "Had kids." But Shockley did not write any comments such as "like," "not like," "good" or "bad" for J.B.

¶27  Whitlow claims that when Shockley allowed J.B. to serve on the jury despite J.B.'s "multiple concerns about his ability to be impartial," Shockley's advocacy for Whitlow was deficient. Whitlow argues that J.B. raised questions about his ability to be impartial due to what he had read in the paper and the fact that he had three little girls. Whitlow contends that J.B. demonstrated bias and that Shockley failed to make any further inquiry into J.B.'s bias. Whitlow notes that although the prosecution left J.B. to

"wrestle" with the issue of whether he could be impartial, Shockley never followed up regarding the outcome of this "wrestling match." Whitlow also points to Shockley's testimony at the evidentiary hearing that he did not recall why he did not ask any follow-up questions of J.B. or why he left J.B. on the jury. When asked by Shockley's postconviction counsel whether, "in hindsight," he would have asked J.B. further questions, Shockley replied, "I think it would have been a good idea." Likewise, Shockley's affidavit in support of Whitlow's petition for postconviction relief stated that "after reading the draft of the Memorandum of the Petitioner, it appears that I should have asked more questions."

¶28     The State counters by arguing that J.B.'s responses to the prosecutor's questions did not indicate partiality on J.B.'s part and, thus, that Shockley did not have any reason to ask J.B. follow-up questions. The State further claims that Whitlow's arguments and Shockley's testimony do not rebut the presumption that Shockley's performance was reasonable. Accordingly, the State maintains that Whitlow failed to satisfy the first prong of *Strickland*. Prior to evaluating whether Shockley's performance was reasonable, we begin by examining the purpose of voir dire and challenges to a juror.

¶29     Defense counsel has a duty to ensure a defendant's right to a fair trial by a panel of impartial jurors. *State v. Lamere*, 2005 MT 118, ¶ 15, 327 Mont. 115, ¶ 15, 112 P.3d 1005, ¶ 15. "The purpose of voir dire in a criminal proceeding is to determine the existence of a prospective juror's partiality, that is, his or her bias and prejudice." *State v. Herrman*, 2003 MT 149, ¶ 23, 316 Mont. 198, ¶ 23, 70 P.3d 738, ¶ 23. Adequate questioning enables counsel to exercise his or her peremptory challenges intelligently.

18

*Herrman*, ¶ 23; *Lamere*, ¶ 15. Adequate questioning also enables counsel to properly raise a challenge for cause pursuant to § 46-16-115(2)(j), MCA. *Lamere*, ¶ 15.

¶30 Section 46-16-115, MCA, enumerates the grounds on which a juror may be excused for cause. Most relevant to this appeal, § 46-16-115(2)(j), MCA, provides that:

> A challenge for cause may be taken for all or any of the following reasons or for any other reason that the court determines: . . . having a state of mind in reference to the case or to either of the parties that would prevent the juror from acting with entire impartiality and without prejudice to the substantial rights of either party. [Paragraph breaks omitted.]

"As the right to trial by an impartial jury is principally secured through the system of challenges exercised during voir dire, it is incumbent on defense counsel to develop information in the record that demonstrates a juror's bias as to a party or an issue in the case." *Lamere*, ¶ 15. If voir dire examination raises a serious question about a prospective juror's ability to be fair and impartial, then dismissal for cause is favored. *State v. Heath*, 2004 MT 58, ¶ 10, 320 Mont. 211, ¶ 10, 89 P.3d 947, ¶ 10. "Disqualification based on a juror's alleged prejudice is necessary only where jurors form fixed opinions on the guilt or innocence of the defendant which they would not be able to lay aside and render a verdict based solely on the evidence presented in court." *State v. Freshment*, 2002 MT 61, ¶ 12, 309 Mont. 154, ¶ 12, 43 P.3d 968, ¶ 12 (internal quotation marks omitted).

¶31 Examining Shockley's conduct in light of the purposes of voir dire and the circumstances surrounding voir dire at Whitlow's trial, we conclude that Whitlow has not shown Shockley's performance to be deficient with respect to J.B.. Contrary to Whitlow's assertions, Shockley did essentially follow-up with J.B. by questioning him

about both his and his son's mental health treatment and by asking him, along with the other jurors, whether there was anything that could keep him from being objective. Shockley testified that he observed the jurors during voir dire questioning, that he reviewed the questionnaire forms for all the jurors, that he took detailed notes on each of the jurors including J.B., and that he attempted to establish some rapport with J.B. based on J.B.'s son entering the Marine Corps. In addition, it is clear that there were other jurors who were of greater concern to Shockley in terms of being biased against Whitlow, as evidenced by Shockley's comments in his voir dire notes and his questioning during voir dire. Shockley himself stated in his affidavit that he did not believe that J.B. was biased at the time of voir dire and that it was only upon reflection several years later that he changed his mind. Yet, "[a] fair assessment" of Shockley's performance "requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065. The circumstances surrounding Shockley's evaluation of J.B. do not establish that his original assessment of J.B. was unreasonable.

¶32 More to the point, Whitlow has failed to demonstrate that Shockley's conduct in evaluating J.B. fell below an objective standard of reasonableness. The Supreme Court made clear in *Strickland* that "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688, 104 S. Ct. at 2065. Whitlow, however, has offered no legal authority or expert testimony concerning the prevailing professional norms applicable to Shockley's evaluation of J.B.

20

*Cf. Yarborough v. Gentry*, 540 U.S. 1, 7-8, 124 S. Ct. 1, 5 (2003) (per curiam). Rather, Whitlow has offered only Shockley's testimony that, in hindsight, he would have asked further questions of J.B. and he could not recall any tactical reason for not asking J.B. additional questions. Yet, "even if an omission is inadvertent, relief is not automatic. The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight." *Yarborough*, 540 U.S. at 8, 124 S. Ct. at 6. As explained above, the pertinent question is whether, "in light of all the circumstances," Shockley's decision not to ask additional questions of J.B. fell outside "the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690, 104 S. Ct. at 2066. Again, there is a strong presumption that Shockley's conduct fell within this range, *see Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065; *State v. Hamilton*, 2007 MT 223, ¶ 16, 339 Mont. 92, ¶ 16, 167 P.3d 906, ¶ 16, and we conclude that Whitlow has not overcome this presumption.

¶33    In sum, there is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance and was based on sound trial strategy. In order to overcome this presumption, the convicted defendant making a claim of ineffective assistance must demonstrate that counsel's conduct fell below an objective standard of reasonableness measured under prevailing professional norms. Here, Whitlow has failed to make this showing in his presentation to the Court. Accordingly, we hold that Whitlow has not demonstrated that Shockley's performance during voir dire with respect to J.B. was constitutionally deficient.

**B.  Juror E.F.**

¶34   During voir dire, the prosecutor asked E.F. whether he had heard anything about the case.  The following exchange ensued:

> MR. CORN:  . . .  [W]e'll start with you, [E.F.].  Have you heard anything about the case?
> [E.F.]:  Yes, I read about it in the papers and discussed it with the family.
> MR. CORN:  That was about six months ago or seven months ago?
> [E.F.]:  That was after the incident occurred.
> MR. CORN:  Is there anything that you recall from your -- from that time that would prevent you from reserving judgment until all the evidence came in in this case?
> [E.F.]:  No.

Whitlow claims that Shockley rendered ineffective assistance of counsel when he failed to inquire into E.F.'s statement that he discussed the incident with "the family."

¶35   As a threshold matter, there is some confusion as to whether "the family" referred to E.F.'s family or to the victim's family.  In his petition for postconviction relief, Whitlow misquoted the voir dire transcript and then claimed that Shockley had failed to question E.F. about "the statement that [E.F.] had discussed the alleged rape and aggravated kidnaping [sic] with *the victim's* family" (emphasis added).  However, upon reading the transcript at the evidentiary hearing Shockley stated, "The way I read the transcript, he's talking about [E.F.]'s own family."  When asked whether he assumed it was E.F.'s own family, Shockley replied, "I don't recall, but if I was hearing this today, that's what I would have thought."  Finally, as the State points out, during voir dire the prosecutor read off the names of several witnesses—including the victim and the victim's mother, aunts, and uncle—and asked the jurors whether they knew any of these individuals.  E.F. never gave any indication that he knew the victim or her family.  We

22

agree with the State that this fact, along with the actual transcript of E.F.'s questioning, demonstrates that E.F. was referring to his family, not the victim's family.

¶36 Nonetheless, Whitlow asserts that even assuming E.F. was referring to his family, Shockley should have asked what E.F. said to them and what his family said in response. Whitlow claims that doing so "would have revealed any preconceptions or biases that [E.F.] brought to the courtroom." Whitlow claims that there was no tactical reason for leaving E.F. on the jury. In support of this, Whitlow provides Shockley's testimony in which Shockley acknowledged that it would have been reasonable for him to inquire into what E.F. said to his family and what they said to him. Also, when asked whether he had made a tactical decision about E.F., Shockley again replied, "Not that I recall."

¶37 The State argues that Whitlow's claim is based on "speculation and pure hindsight" and that Whitlow fails to demonstrate that Shockley's performance fell below the range of reasonable professional assistance. Furthermore, the State claims that even if Shockley had questioned E.F. further about the conversation with his family, E.F. would not have been subject to removal for cause because E.F. "stated that what he learned about Whitlow's case would not prevent him from reserving judgment until all the evidence came in."

¶38 We agree with the State that Whitlow has failed to demonstrate that Shockley's conduct with respect to E.F. fell below an objective standard of reasonableness. He has not shown that under prevailing professional norms, it was unreasonable for Shockley not to ask further questions about what E.F. discussed with his family. Thus, Whitlow has failed to overcome the strong presumption that Shockley's conduct fell within the wide

23

range of reasonable professional assistance. *See Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065. We hold that Shockley's performance in voir dire with respect to E.F. has not been shown to be constitutionally deficient.

¶39 Because Whitlow has failed to demonstrate that Shockley's conduct with respect to both J.B. and E.F. fell below an objective standard of reasonableness measured under prevailing professional norms and in light of the surrounding circumstances, we need not address the prejudice prong of the *Strickland* test. *See Strickland*, 466 U.S. at 697, 104 S. Ct. at 2069; *Adams*, ¶ 22.

## CONCLUSION

¶40 Whitlow has failed to demonstrate that Shockley's conduct with respect to voir dire questioning of Jurors J.B. and E.F. was deficient, as he has failed to overcome the presumption that the challenged acts and omissions fell within the wide range of reasonable professional assistance. Accordingly, he has not satisfied the first prong of the *Strickland* test and, therefore, his ineffective assistance of counsel claim fails.

¶41 Affirmed.

/S/ JAMES C. NELSON

We Concur:

/S/ PATRICIA COTTER
/S/ W. WILLIAM LEAPHART
/S/ BRIAN MORRIS
/S/ JIM RICE

24