FILED

12/27/2016

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 15-0730

DA 15-0730

IN THE SUPREME COURT OF THE STATE OF MONTANA

2016 MT 337N

STATE OF MONTANA,

        Plaintiff and Appellee,

    v.

GARRETT LEE WHITEGRASS,

        Defendant and Appellant.

APPEAL FROM:    District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. DDC-14-184
Honorable Dirk M. Sandefur, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

            Carl B. Jensen, Attorney at Law, Great Falls, Montana

        For Appellee:

            Timothy C. Fox, Montana Attorney General, Katie F. Schulz, Assistant
Attorney General, Helena, Montana

            John W. Parker, Cascade County Attorney, Great Falls, Montana

Submitted on Briefs:  November 30, 2016

Decided:   December 27, 2016

Filed:

                              Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1     Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2     In December 2014 a jury convicted Garrett Whitegrass of felony sexual intercourse without consent. Whitegrass appeals and we affirm. The issue on appeal is whether Whitegrass's attorney provided effective assistance of counsel.

¶3     The victim reported to the emergency room for treatment in April 2014. The evidence showed that she had been violently assaulted, suffering a concussion, severe trauma to her face including broken bones, black eyes and severe bruising, bite marks on her body and severe vaginal injuries. Whitegrass admitted to having intercourse with the victim, but claimed that he either blacked out and did not remember inflicting any injuries, or that someone else was responsible. The District Court continued the trial date twice at the request of the defense to allow for evidence analysis and witness interviews.

¶4     A week prior to trial the State obtained a recording of a May 2014 phone conversation between Whitegrass and his parents. The State provided the defense a copy of the recording on Wednesday of the week before trial. While Whitegrass remembered talking to his parents, he believed that he had not said anything incriminating and so was not concerned that the State had the recording. On the recording Whitegrass stated,

among other things, that the victim was "slutty" and that she "probably wanted it." At trial the defense objected to the recording on the basis that its probative value was outweighed by its prejudicial effect, but the District Court admitted the evidence. Whitegrass testified that the point of the conversation with his mother was that he only wanted the victim to "tell the truth."

¶5 Defense counsel met with Whitegrass at or near the time the State produced the recording to discuss the State's plea offer of ten years with five suspended. Whitegrass rejected the offer and countered with eight years with five suspended, which the State rejected.

¶6 As the case proceeded to trial the District Court considered the admissibility of a spent condom found in the yard of Whitegrass's residence. DNA analysis indicated that the semen came from Whitegrass's brother. The District Court concluded that evidence of the condom was not admissible under the Rape Shield statute. On the second day of trial the defense announced that it had discovered Whitegrass's cell phone the previous night and made it available to the State. The District Court later admitted some of the text messages that were generated between Whitegrass and the victim both prior to and after the rape. Those messages implied that the victim agreed to meet Whitegrass; that she was bringing drugs for him (Klonopin); and that the two planned to have sex. The content of these messages caused the State to recall the victim, who recanted parts of her testimony from the day before in which she denied that she had given drugs to Whitegrass.

¶7     After the jury convicted Whitegrass the District Court granted a defense motion to appoint new counsel for post-trial proceedings. Whitegrass's new attorney filed a "Motion to Enforce Plea Offer" requesting that the State be required to re-offer its rejected plea deal of ten years with five suspended. The District Court conducted an evidentiary hearing. The parties apparently agreed that the hearing would not focus on whether Whitegrass's trial counsel provided effective assistance.

¶8     Trial counsel testified that on December 3 he received the recording of the phone conversation between Whitegrass and his parents, and that it contained incriminating statements. Counsel testified that he believed the biggest hurdle for the defense was the severity of the victim's injuries, but that there was a chance of "prevailing" by impeaching her account of the events. He said that he probably recommended that Whitegrass take the State's plea offer but was not sure. Whitegrass testified that he knew about the recorded conversation before he rejected the State's plea offer, but that his construction of the situation was that the conversation was "all the State had on me"; that they "didn't have DNA on me"; and that the State's case was "weak."

¶9     At the conclusion of the testimony the District Court determined that Whitegrass had not demonstrated that he was denied the opportunity to make a knowing and voluntary plea decision. Rather, Whitegrass made a deliberate choice to not learn more about the evidence (principally the recording) because of his own belief that he would not have said anything that damaged his defense. The District Court noted that Whitegrass never claimed that his attorney failed to discuss the recording with him and never denied

4

that he had the opportunity, if he chose, to examine the contents of the recording. The District Court sentenced Whitegrass to a lengthy prison term.

¶10 Whitegrass appeals his conviction, but he does not appeal denial of his motion to enforce the State's rejected plea offer. Rather, he contends that his attorney was ineffective. He contends that in the face of the "late" production of the recording, the DNA evidence from the condom, and the contents of his cell phone, his attorney should have requested a continuance of the trial in an effort to re-engage the State in plea negotiations.

¶11 This Court evaluates claims of ineffective assistance of counsel under the test established in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984). *Whitlow v. State*, 2008 MT 140, ¶ 10, 343 Mont. 90, 183 P.3d 861. First, the defendant must show that his attorney's performance was deficient by demonstrating that it fell below an objective standard of reasonableness. *Whitlow*, ¶ 14. There is a strong presumption that the attorney's performance fell within the wide range of reasonable professional assistance, *Whitlow*, ¶ 15, because there are "countless ways to provide reasonable assistance in any given case." *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065.

¶12 Second, the defendant must show that his attorney's deficient performance prejudiced the defense. *Whitlow*, ¶ 10. This requires a showing of a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068.

¶13 The record as a whole, including the post-trial hearing regarding the plea negotiations, sufficiently demonstrates that Whitegrass's attorney was not ineffective in

failing to request a continuance in order to ask the State to re-engage in plea negotiations. Whitegrass's arguments to the contrary are largely speculative. Whitegrass speculates that the District Court would have stopped the trial to allow the defense to ask the State about a plea agreement. He speculates that the State would agree to plea negotiations after its case had gotten stronger. He speculates that the State would have made a plea offer that Whitegrass would have accepted, after he had already rejected an offer of ten years with five suspended.

¶14 In addition, the evidence of the condom found in the yard was not likely to be admitted because of the Rape Shield law.[1] Furthermore, the text messages on Whitegrass's cell phone were actually favorable to the defense (indicating that the victim had agreed to meet and have sex and to bring drugs).

¶15 Whitegrass has only speculated that a continuance would be granted during trial and that it would result in a new plea offer that he would have accepted. This is insufficient to demonstrate ineffective assistance of counsel. We conclude that Whitegrass has failed to demonstrate that trial counsel's performance fell outside the "wide range of reasonable professional assistance" recognized by the law.

¶16 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, this case presents a question controlled by settled law or by the clear application of applicable standards of review.

---

[1] The Montana Rape Shield Law generally precludes, in prosecutions of sexual offenses, the admission of evidence concerning the sexual conduct of the victim except evidence of past conduct with the defendant. Section 45-5-511(2), MCA.

¶17    Affirmed.

/S/ MIKE McGRATH

We Concur:

/S/ MICHAEL E WHEAT
/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER
/S/ LAURIE McKINNON