DA 11-0373

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2012 MT 163

LARRY BOMAR,

> Petitioner and Appellant,

v.

STATE OF MONTANA,

> Respondent and Appellee.

APPEAL FROM:    District Court of the Ninth Judicial District,
In and For the County of Glacier, Cause No. DV 10-63
Honorable Laurie McKinnon, Presiding Judge

COUNSEL OF RECORD:

> For Appellant:
>
>> Wade Zolynski, Chief Appellate Defender; Koan Mercer, Assistant
>> Appellate Defender; John Wright, Legal Intern; Helena, Montana
>
> For Appellee:
>
>> Steve Bullock, Montana Attorney General; Mardell Ployhar, Assistant
>> Attorney General; Helena, Montana
>>
>> Carolyn Berkram, Glacier County Attorney; Cut Bank, Montana

Submitted on Briefs:  May 30, 2012

Decided:  July 31, 2012

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1    Larry Bomar (Bomar) appeals from the order of the Ninth Judicial District Court, Glacier County, dismissing his petition for postconviction relief, which alleged ineffective assistance of his trial counsel. We affirm and address the following issue:

¶2    *Did the District Court err by dismissing Bomar's postconviction petition?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3    In 2005, Bomar was charged with attempted sexual intercourse without consent and sexual assault, both felonies, upon K.J. The crimes were alleged to have occurred in 2000, when K.J. was six years old. K.J. was twelve years old at the time the trial was conducted in November, 2005. Bomar was represented by Daniel Donovan and Jeremy Yellin. The jury convicted Bomar of sexual assault and acquitted him of attempted sexual intercourse without consent. He was sentenced to twenty-seven years at the Montana State Prison with twelve years suspended.

¶4    Bomar appealed the conviction, and this Court affirmed. *State v. Bomar*, 2008 MT 91, 342 Mont. 281, 182 P.3d 47. We rejected Bomar's argument that there was insufficient evidence to support his conviction and declined to reach his arguments concerning the testimony of the State's expert witness, Rochelle Beley (Beley), on grounds that his arguments were waived for failing to timely raise them in the District Court. *Bomar*, ¶¶ 27, 33-41. Bomar thereafter filed a pro se petition for postconviction relief and was appointed counsel by the District Court to represent him in the proceeding.

2

Bomar's counsel filed a supplemental brief in support of the petition, arguing that Bomar's trial counsel had rendered ineffective assistance by, inter alia, failing to present exculpatory medical evidence and failing to present adequate expert testimony to challenge the qualifications and testimony of Beley. The District Court conducted an evidentiary hearing and thereafter dismissed the petition. Bomar appeals. Additional facts will be discussed herein.

## STANDARD OF REVIEW

¶5     In postconviction relief proceedings, we review a district court's findings of fact to determine if they are clearly erroneous. We review its conclusions of law to determine if they are correct. *Rogers v. State*, 2011 MT 105, ¶ 12, 360 Mont. 334, 253 P.3d 889. "Ineffective assistance of counsel claims present mixed questions of law and fact that the Court reviews de novo." *Rogers*, ¶ 12. A petitioner seeking to reverse a district court's order denying postconviction relief based on ineffective assistance of counsel has a heavy burden. *State v. Morgan*, 2003 MT 193, ¶ 9, 316 Mont. 509, 74 P.3d 1047.

## DISCUSSION

¶6     *Did the District Court err by dismissing Bomar's postconviction petition?*

¶7     When evaluating a claim of ineffective assistance of counsel, we use the two-part test enunciated in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984); *Whitlow v. State*, 2008 MT 140, ¶ 10, 343 Mont. 90, 183 P.3d 861. Under the first prong of the *Strickland* test, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Whitlow*, ¶ 14 (quoting *Strickland*, 466 U.S. at

3

687-88, 104 S. Ct. at 2064). "'There is a strong presumption with regard to the first prong of the *Strickland* test that trial counsel's performance was based on sound trial strategy and falls within the broad range of reasonable professional conduct.'" *Whitlow*, ¶ 21 (citations omitted). "In order to eliminate the distorting effects of hindsight, we have explained that judicial scrutiny of counsel's performance must be highly deferential." *Worthan v. State*, 2010 MT 98, ¶ 10, 356 Mont. 206, 232 P.3d 380 (citing *Whitlow*, ¶ 15). The burden of establishing the first prong "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Whitlow*, ¶ 10 (citing *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064).

¶8 Under the second prong, the defendant must show that counsel's performance prejudiced the defense. *Whitlow*, ¶ 10 (citing *State v. Racz*, 2007 MT 244, ¶ 22, 339 Mont. 218, 168 P.3d 685). "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068. The defendant must prove both prongs in order to succeed on his ineffective assistance of counsel claim; therefore, if a defendant makes an insufficient showing regarding one prong of the test, there is no need to address the other prong. *Whitlow*, ¶ 11 (citing *Adams v. State*, 2007 MT 35, ¶ 22, 336 Mont. 63, 153 P.3d 601).

¶9     Bomar argues his trial attorneys were ineffective by failing to adequately challenge Beley's expert testimony and by failing to offer exculpatory medical evidence that was referenced during the defense's opening statement.

**A.  Failure to rebut testimony of the State's expert.**

¶10    The incident giving rise to the charges was alleged to have occurred in Montana in July of 2000, when K.J. was six years old.  The record indicates that K.J., who resides in Oregon, did not speak about the incident until December of 2001.  After she told her mother what had happened, an Oregon police detective interviewed K.J. at her school.  The detective did not record the conversation with K.J., but he took notes during the interview.  A medical examination was performed upon K.J. at a child advocacy center that revealed no signs of vaginal trauma or physical injury.  She was also interviewed by medical personnel at the advocacy center.  Bomar was thereafter charged.[1]

¶11    Prior to trial, Bomar's attorneys filed several motions in limine, "four of which pertained to K.J.'s out-of-court statements, Beley's anticipated expert testimony or both." *Bomar*, ¶ 30.  Beley, a therapist with a Master's Degree in Marriage and Family Therapy, was expected to testify concerning the credibility of K.J.'s statements to the Oregon detective and to the medical personnel at the child advocacy center, based upon a Statement Validity Assessment (SVA)[2] completed by Beley.  Bomar's counsel requested

---

[1] Bomar was originally charged with sexual assault and sexual intercourse without consent, but after the State learned there was no evidence of penetration, it amended the sexual intercourse without consent charge to attempted sexual intercourse without consent.

[2] A Statement Validity Assessment is a methodology used to determine whether allegations of sexual abuse by children are more consistent with a true account or a false account of abuse,

a hearing on their motions in limine. The District Court indicated that it did not have time for a hearing and that it assumed that the motions could be decided on the briefs. Counsel agreed that the District Court could decide the motions on the briefs. *See Bomar*, ¶ 32. The District Court granted Bomar's motion to preclude Beley from testifying about the ultimate issue of whether K.J. was truthful and reserved ruling on other issues concerning Beley's anticipated testimony until trial.

¶12 The court held an in-chambers hearing during the trial to address Beley's anticipated trial testimony. Beley testified she had received training on conducting SVAs and that she was familiar with the vast body of research on SVAs. She testified that an in-person interview or recording of the child's interview was preferable but was not necessary if the interviewer had written down how the questions were asked and the responses of the child.

¶13 Defense counsel hired two experts, Dr. Donna Zook and Dr. Michael Scolotti, who ultimately expressed strong disagreement with Beley's opinion that an in-person interview with the child or some sort of verbatim documentation of the interview was not necessary. Neither Zook nor Scolotti testified at the in-chambers hearing, although Bomar's counsel extensively cross-examined Beley about her testimony, focusing on Beley's failure to personally interview the child. Counsel then argued to the court that

---

based on the 1991 study, "Assessment of Children's Statements of Sexual Abuse," by David C. Raskin and Phillip W. Esplin, published in *The Suggestibility of Children's Recollections* 153-64 (John Doris ed., Am. Psychol. Assn. 1991). The validity of the methodology used in the Assessment is not at issue here.

Beley did not have adequate credentials to qualify as an expert and that her flawed methodology required exclusion of her testimony.

¶14 The District Court denied the defense's motions, ruling that Beley had satisfied the *Scheffelman*[3] requirements and could testify at trial. The District Court permitted Beley to testify from her assessment about the factors that indicated truthfulness in K.J.'s statements to the detective and medical personnel, but it excluded any testimony about whether K.J. was in fact truthful or not truthful. Beley thus testified to the jury that "many of [K.J.]'s statements were consistent with the research, which shows valid statements of sexual abuse." Defense counsel cross-examined Beley about her failure to personally interview K.J. and the absence of a recording of the interview. Counsel elicited from Beley the concession that the accuracy of her assessment depended upon K.J.'s statements being accurately reported by the detective and the medical personnel.

¶15 After the State rested, defense counsel moved to strike Beley's testimony and for an instruction that the jury was to disregard the testimony or, alternatively, for a mistrial. The court denied the motion. The defense then called Dr. Zook, who testified that Beley's SVA was flawed. When asked which procedures necessary for a valid SVA Beley had failed to follow, Dr. Zook responded "[t]he most significant is that she did not interview the child face-to-face."

---

[3] *State v. Scheffelman*, 250 Mont. 334, 820 P.2d 1293 (1991), permits an expert to testify, under certain conditions, about the credibility of an alleged victim of child sexual abuse who testifies at trial. The trial court must determine that the witness has "(1) extensive first hand experience with sexually abused and non-sexually abused children; (2) thorough and up to date knowledge of the professional literature on child sexual abuse; and (3) objectivity and neutrality about individual cases as are required of other experts." *Scheffelman*, 250 Mont. at 342, 820 P.2d at 1298.

¶16 After Bomar was convicted of sexual assault, he moved for a new trial supported by an affidavit from Dr. Scolotti expressing Scolotti's disagreement with Beley's methodology and opining that her SVA was invalid because of the failure to have, at least, a verbatim transcript of the interviews. The District Court denied the motion.

¶17 Bomar argues that "[w]hile defense counsel had evidence showing that [Beley] fundamentally misunderstood the research-based Statement Validity Assessment for analyzing the credibility of children's statements . . . they failed to present the evidence to the district court in a timely manner." Bomar argues his defense attorneys were ineffective in failing to call Dr. Zook during the in-chambers hearing to demonstrate that Beley did not have sufficient knowledge of SVAs or the requisite evidence for completion of a valid SVA of K.J.'s statements. Bomar contends that, had this been done, Beley would not have been allowed to testify as an expert witness under Mont. R. Evid. 702 or the second prong of the *Scheffelman* test, which requires "thorough and up to date knowledge of the professional literature on child sexual abuse." *Scheffelman*, 250 Mont. at 342, 820 P.2d at 1298. Instead, Beley was "allowed to tell the jury that the child's testimony was confirmed by the rigors of the scientific method." Had Dr. Zook testified about Beley's flawed understanding during the in-chambers hearing or had defense counsel insisted on a pretrial hearing instead of ceding to the court's request to rule based on the briefing, Bomar posits that the outcome of the trial would likely have been different. Noting our ruling in *Bomar*, Bomar argues that his defense counsel

8

"deficiently waived the pretrial *Daubert*[4] hearing on Ms. Beley's flawed testimony." The State responds that "Bomar's defense counsel made an aggressive effort to prevent the State from being able to present Beley's testimony" and that they "provided active and capable representation and were not ineffective."

¶18 The record reveals that Bomar's defense counsel were sharply focused on Beley's testimony and fully engaged in an effort to exclude or undermine it. Prior to trial, counsel filed several motions in limine for the specific purpose of precluding or limiting Beley's anticipated testimony. They hired Dr. Zook to evaluate K.J.'s statements, analyze Beley's work, and provide rebuttal testimony should Beley be permitted to testify. They strongly cross-examined Beley at the in-chambers hearing. During trial, counsel made vigorous objections to Beley's qualification as an expert and challenged her opinion as being improperly based upon the notes of the detective and the medical personnel and lacking an in-person interview of K.J. After Beley testified, counsel again objected to her testimony, moved to strike her testimony, moved to instruct the jury to disregard it, and moved alternatively for a mistrial. When the District Court denied their motions, they called Dr. Zook to rebut Beley's testimony and to demonstrate Beley's flawed approach to the SVA. Bomar's counsel's efforts to disqualify Beley's testimony were such that, upon their request for a mistrial, the prosecutor commented, "Your Honor, I believe that point has been belabored." In closing arguments, Bomar's counsel

---

[4] *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 113 S. Ct. 2786 (1993).

9

again emphasized the flaws in Beley's testimony. After trial, they moved for a new trial based upon Dr. Scolotti's assessment.

¶19 Mr. Donovan's and Mr. Yellin's efforts were exhaustive and commendable. If they can also be described as imperfect, that is not the standard by which effective representation is assessed. "'The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight.'" *Whitlow*, ¶ 32 (quoting *Yarborough v. Gentry*, 540 U.S. 1, 8, 124 S. Ct. 1, 6 (2003) (per curiam)). "It is 'all too tempting' to 'second-guess counsel's assistance after conviction or adverse sentence.' . . . . The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Harrington v. Richter*, 562 U.S.___, 131 S. Ct. 770, 788 (2011) (citing *Strickland*, 466 U.S. at 689, 690, 104 S. Ct. at 2052). "Success is not the test of efficient counsel." *Riggs v. State*, 2011 MT 239, ¶ 32, 362 Mont. 140, 264 P.3d 693 (citing *State v. Martz*, 233 Mont. 136, 140, 760 P.2d 65, 68 (1988)). Bomar's counsels' efforts clearly fell within "the wide range of reasonable professional assistance," *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065, and it certainly cannot be said that they "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Whitlow*, ¶ 10 (citing *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064). Bomar's claim does not satisfy the first prong of the *Strickland* test and thus has not established ineffective assistance of counsel.

**B. Failure to introduce medical evidence.**

10

¶20 During his opening statement, Mr. Donovan told the jury that "[t]he evidence will show that there's no medical evidence of that, there's no sign of an injury in her private area, no scarring, no DNA, nothing whatsoever." When K.J. was examined at the child advocacy center a year and a half after the alleged assault, the medical professionals found no signs of trauma or physical evidence of injury. However, neither the defense nor the State introduced any medical evidence.

¶21 Bomar thus contends that his counsel was ineffective for promising evidence to the jury that was never produced. He argues that "[t]he one piece of evidence that could impeach K.J.'s core claim of penetration, the first piece of evidence promised by defense counsel during opening statement, the piece of evidence that would cast a shadow over the state's entire case, was never introduced," and "counsel could have no reason to then expressly promise the jury evidence that he did not intend to present."

¶22 The State argues defense counsel was not ineffective because their decision not to introduce the medical evidence, or the lack thereof, was sound trial strategy. Both defense counsel testified at the postconviction hearing that they made a strategic decision during the trial not to introduce the medical evidence. They reasoned it would have opened the door for the State to offer expert testimony to the effect that the absence of trauma a year and a half after the assault did not demonstrate that penetration had not occurred. Additionally, counsel testified that because the charge of sexual intercourse without consent had been amended to attempted sexual intercourse without consent, penetration was no longer an issue that needed to be litigated. The State also notes that,

11

though no medical evidence was introduced, Mr. Yellin's closing argument nonetheless "focused on the fact that there was not any physical evidence to support the charges against Bomar, which was an important piece of the defense."

¶23   In *Worthan v. State*, 2010 MT 98, 356 Mont. 206, 232 P.3d 380, we held that a defense counsel's promise during opening statement to produce an expert who was not ultimately called to testify, did not constitute ineffective assistance because it was not prejudicial to Worthan. *Worthan*, ¶ 16. Similarly, it cannot be said that but for Bomar's counsel's unfulfilled promise to present medical evidence, the result of the trial likely would have been different, as required under the second prong of *Strickland*. *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068 ("The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."). We conclude that, because the issue of penetration was no longer an issue, and counsel was nonetheless able to argue during closing that the State failed to provide any evidence of physical injury to K.J., that counsel's misstatement did not prejudice the outcome of the trial.

¶24   Affirmed.

/S/ JIM RICE


We concur:

/S/ MIKE McGRATH
/S/ MICHAEL E WHEAT
/S/ BETH BAKER
/S/ BRIAN MORRIS

12