FILED

02/06/2018

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 16-0240

DA 16-0240

IN THE SUPREME COURT OF THE STATE OF MONTANA

2018 MT 18

STATE OF MONTANA,

       Plaintiff and Appellee,

  v.

MATTHEW RYAN AILER,

       Defendant and Appellant.

| | |
|---|---|
| APPEAL FROM: | District Court of the First Judicial District, In and For the County of Lewis And Clark, Cause No. CDC-2014-98 Honorable Kathy Seeley, Presiding Judge |

COUNSEL OF RECORD:

      For Appellant:

          Nick K. Brooke, Colin M. Stephens, Smith & Stephens, P.C., Missoula, Montana

      For Appellee:

          Timothy C. Fox, Montana Attorney General, Ryan Aikin, Assistant Attorney General, Helena, Montana

          Daniel Guzynski, Mary E. Cochenour, Special Deputy Lewis and Clark County Attorneys, Helena, Montana

Submitted on Briefs: December 6, 2017

Decided: February 6, 2018

Filed:

_____
              Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1 This is an appeal from a First Judicial District Court order denying Matthew Ailer's (Ailer) motion in limine to exclude evidence at trial that his wages were being garnished, and an order requiring Ailer to pay $64,025.34 in restitution plus statutory and administration fees. We affirm.

¶2 We restate the issues on appeal as follows:

1. *Whether the District Court erred when it denied Ailer's ineffective assistance of counsel claim.*

2. *Whether evidence that Ailer's wages were being garnished is a "bad act" and inadmissible character evidence pursuant to M. R. Evid. 404(b).*

3. *Whether the District Court had substantial evidence to support its restitution order.*

## PROCEDURAL AND FACTUAL BACKGROUND

¶3 In May 2011, Ailer was involved in an accident on Highway 93 while driving a van for Garden City Janitorial as one of its janitors. Garden City Janitorial has a workers' compensation insurance policy from the Montana State Fund (State Fund). On May 18, 2011, Ailer filed a claim with the State Fund, reporting that he injured his arm in the crash. Ailer asserted his symptoms worsened even after receiving continued medical treatment. Ailer was ultimately released to full-duty employment by Dr. Stephen Powell on October 4, 2011.

¶4 On October 6, 2011, Ailer began seeing a physical therapist, Kristen Green. Ailer asked Green for a note to give to his employer that would restrict him from lifting a heavy floor burnisher while at work. Green wrote a letter and Ailer gave it to his

employer, Cory Miller. The day after receiving this letter, Miller trained Ailer and Ailer's coworker, Jeff Russell, to safely lift the burnisher and unload it from the back of the work truck using a ramp.

¶5 Ailer filed a second workers' compensation claim with the State Fund, reporting that his arm went numb as he was lifting the burnisher into the work truck on October 16, 2011, and it fell on him. Russell and Chelsea Chafee, another coworker and Ailer's fiancée at the time, were with Ailer when this accident occurred. Russell and Chafee took Ailer to the emergency room at Community Medical Center in Missoula. Ailer complained of pain, numbness and a pin-pricking sensation in his neck and back. During the months following the accident, Ailer complained to doctors that he was in extreme pain, could not use his right arm and leg, and could not walk without the use of a cane. The State Fund accepted Ailer's claim.

¶6 On March 12, 2012, Russell told Miller that Ailer's accident with the burnisher was staged. Russell reported to Gaylen Buchanan, a Special Investigator for the State Fund, that Ailer and Chafee asked Russell to put the burnisher on top of Ailer after they finished a job cleaning the O'Reilly's auto parts store in Missoula. Russell stated that Ailer wanted it to look like an accident so that Ailer could file a workers' compensation claim. Russell was reluctant but agreed to help after Ailer and Chafee promised to pay Russell $20,000 from the settlement of Ailer's claim. Russell stated that the three of them drove a few blocks away from the auto parts store to carry out the plan. Russell and Chafee placed the burnisher on Ailer's chest and rolled it back and forth to create an injury. However, Ailer was not satisfied with the result and asked Russell to punch Ailer

3

several times. After doing so, Russell and Chafee took Ailer to the Community Medical Center.

¶7 Buchanan began to investigate Russell's claim that the accident was staged. Buchanan discovered evidence that Ailer's complaints and claims did not align with his physical symptoms, or lack thereof. The State Fund referred the case to the Montana Department of Justice, Division of Criminal Investigations for further investigation. DCI Agent Butch Huseby was assigned the case. Agent Huseby focused on Ailer's medical reports and interviewed many of the doctors and medical staff that had treated Ailer since his injury in October 2011. Agent Huseby noted that all of the doctors agreed Ailer showed no medical signs of trauma or injury.

¶8 On March 14, 2014, Ailer was charged by Information with Theft, a felony, for purposely and knowingly staging a work accident on October 16, 2011, for the purpose of filing a false workers' compensation insurance claim with the State Fund. Trial commenced on December 7, 2015. On December 11, 2015, a jury found Ailer guilty of Theft, by common scheme, of workers' compensation benefits provided under the Workers Compensation Act exceeding $1,500 in value. Ailer's sentencing hearing was held on March 24, 2016. On April 11, 2016, the District Court deferred sentencing for six years and ordered Ailer to pay restitution in the amount of $70,680.34. The District Court found that the total amount of loss incurred by the State Fund was $64,025.34 and imposed additional statutory and administration fees. Ailer appeals.

**STANDARD OF REVIEW**

¶9 Ineffective assistance of counsel claims are mixed questions of law and fact, which we review de novo. *State v. Lucero*, 2004 MT 248, ¶ 12, 323 Mont. 42, 97 P.3d 1106. District courts have broad discretion to determine the admissibility of evidence. *State v. Blaz*, 2017 MT 164, ¶ 10, 388 Mont. 105, 398 P.3d 247. A district court's ruling on the admissibility of evidence is reviewed for an abuse of discretion, which occurs when the district court acts arbitrarily without conscientious judgment or exceeds the bounds of reason, resulting in substantial injustice. *Blaz*, ¶ 10.

¶10 This Court reviews a district court's restitution award for correctness. *State v. Aragon*, 2014 MT 89, ¶ 9, 374 Mont. 391, 321 P.3d 841. We review a district court's findings of fact supporting a restitution award under the clearly erroneous standard. *Aragon*, ¶ 9. A finding of fact is clearly erroneous if "it is not supported by substantial evidence, the court has misapprehended the effect of the evidence, or our review of the record convinces us that a mistake has been committed." *State v. Spina*, 1999 MT 113, ¶ 12, 294 Mont. 367, 982 P.2d 421. Substantial evidence "is evidence that a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence, but may be somewhat less than a preponderance." *State v. Jent*, 2013 MT 93, ¶ 10, 369 Mont. 468, 299 P.3d 332.

**DISCUSSION**

¶11    *1. Whether the District Court erred when it denied Ailer's ineffective assistance of counsel claim.*

¶12    This Court has adopted a two-part test for ineffective assistance of counsel claims, which was established by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984). *Whitlow v. State*, 2008 MT 140, ¶ 10, 343 Mont. 90, 183 P.3d 861. A defendant bears the burden to "prove (1) that counsel's performance was deficient, and (2) that counsel's deficient performance prejudiced the defense." *Whitlow*, ¶ 10. Under the first prong, the defendant has the burden to prove that his or her "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Whitlow*, ¶ 10 (citing *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064). The second prong requires the defendant "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Bomar v. State*, 2012 MT 163, ¶ 8, 365 Mont. 474, 285 P.3d 396 (quoting *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068). Both prongs of the *Strickland* test must be satisfied for an ineffective assistance of counsel claim to be successful. *Whitlow*, ¶ 11.

¶13    Ailer alleges his trial counsel was ineffective for three different reasons. First, Ailer argues that his trial counsel was ineffective because counsel failed to object when Agent Huseby testified: "I looked into the statute to see what elements of theft are involved in this case and did he purposely and knowingly commit a crime to get to this end, and I would say he did." Ailer alleges he was prejudiced because Agent Huseby

testified to the ultimate issue in the case and Ailer's intent. Second, Ailer argues his trial counsel was ineffective because counsel failed to rebut a "material misstatement of fact" regarding whether Ailer had been treated for conversion disorder.[1] Cecelia Robinson, a claims adjuster for the Montana State Fund, testified that Ailer was never treated for conversion disorder and the State Fund never approved any payments for conversion disorder treatment. Ailer alleges that his trial counsel should have corrected Robinson and pointed to claims review analysis forms that were examined by Robinson and reflected treatment for conversion disorder and approved payments for such. Third, Ailer argues his trial counsel was ineffective because counsel failed to object to the prosecutor asking Ailer on cross examination if other witnesses were lying when Ailer's testimony conflicted with testimony given by the State's witnesses.

¶14 Putting aside the question of whether counsel's approach was deficient, Ailer fails to establish how Ailer's trial counsel's failure to object during Agent Huseby's testimony prejudiced him. Even if counsel had objected to Agent Huseby's statement, Ailer fails to show how the result of the proceeding would have been different. If anything, Agent Huseby's testimony was cumulative and added nothing to what had already been covered by the principal fact witnesses at trial. Clearly the jury would have formed their views of the case based on the credibility of those principal witnesses, rather than a minor comment from the investigator regarding his opinion. Both Russell and Chafee testified

---

[1] Sean Jeremiah Tollison, a clinical psychologist, testified at trial that conversion disorder "is when a patient presents with motor or sensory deficits that aren't really attributable to a medical cause. Often a neurologist will evaluate the patient and cannot find a medical explanation for why the patient is having this – the symptom they are having."

regarding Ailer's intent when they stated that the three of them staged the burnisher incident with Ailer so that Ailer could obtain worker's compensation benefits. Based on our review of the record, trial counsel's failure to object to Agent Huseby's characterization of Ailer's actions as fraudulent did not prejudice Ailer's defense.

¶15 Likewise, Ailer fails to demonstrate how his trial counsel's failure to rebut Robinson's testimony regarding whether Ailer had been treated for conversion disorder prejudiced him. That issue was addressed multiple times throughout the trial. Shortly before Robinson testified that Ailer had never been treated for cognitive disorder, she stated that she was aware that Ailer had been diagnosed with conversion disorder but did not think it was related to "either Work Comp incident." Tollison treated Ailer in 2014 and testified that two previous providers diagnosed Ailer with conversion disorder. Tollison proceeded to describe the specifics of conversion disorder and how it applied in Ailer's case. Based on our review of the trial transcript, trial counsel's failure to correct Robinson's statement would not be a factor that could change the final outcome of this proceeding.

¶16 Finally, Ailer was not prejudiced when his trial counsel failed to object when the State asked Ailer if the other witnesses were lying on points of disagreement. It is within the district court's discretion to allow "were they lying" questions. *State v. Hart*, 2000 MT 332, ¶ 43, 303 Mont. 71, 15 P.3d 917. The principal role of the jury in this case was to decide the credibility of the witnesses. Notably, in order to acquit Ailer in this proceeding, the jury would need to have developed reasonable doubt regarding the credibility of the other witnesses. Montana law has allowed counsel to ask a defendant if

8

other witnesses in their case lied during their testimony. *State v. Webster*, 2005 MT 38, ¶ 15, 326 Mont. 112, 107 P.3d 500. In *Hart*, we decided that the use of "are they lying" questions is of probative value in certain situations such as when "clarifying a particular line of testimony, in evaluating the credibility of a defendant who is claiming that everyone else is lying, or when a witness flatly denies the occurrence of events." *Hart*, ¶ 40 (citing *State v. Pilot*, 595 N.W.2d 511, 518 (Minn. 1999). Here, Ailer claimed that everyone else was lying and flatly denied that the burnisher incident was posed. Counsel's failure to object when the State asked Ailer if Russell and Chafee were lying did not prejudice Ailer.

¶17 After a review of the record we conclude that Ailer was not prejudiced by his trial counsel's actions. He has not shown a reasonable probability exists that, but for counsel's alleged errors, the result of the proceeding would have been different. *Bomar*, ¶ 8. We deny Ailer's ineffective assistance of counsel claim.

¶18 *2. Whether evidence that Ailer's wages were being garnished is a "bad act" and inadmissible character evidence pursuant to M. R. Evid. 404(b).*

¶19 The general rule in Montana is that evidence of other crimes or prior bad acts is inadmissible evidence. *State v. Ray*, 267 Mont. 128, 133, 882 P.2d 1013, 1016 (1994); M. R. Evid. 404(b). Montana Rules of Evidence state that "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." M. R. Evid. 404(b). However, evidence of prior acts is "admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." M. R. Evid. 404(b).

9

¶20 On April 22, 2015, the District Court denied Ailer's motion in limine, which argued that evidence of Ailer's wage garnishment was a prior bad act and inadmissible evidence under M. R. Evid. 404(b). Ailer alleges "the use of outstanding debts serves only to malign a defendant and characterize him as dishonest, untruthful, and desperate for money." The District Court found that although wage garnishment may be considered as a prior bad act, it was admissible to prove motive and found the prejudicial effect of the evidence did not outweigh its probative value. We agree with the District Court.

¶21 Other courts have taken a similar approach. In *United States v. Feldman*, 788 F.2d 544, 557 (9th Cir. 1986), the United States Court of Appeals for the Ninth Circuit held that evidence of the defendant's debt was admissible to show his motive to commit a bank robbery. The Ninth Circuit has twice held that "Evidence that tends to show that a defendant is living beyond his means is of probative value in a case involving a crime resulting in financial gain." *Feldman*, 788 F.2d at 557; *United States v. Saniti*, 604 F.2d 603, 604 (9th Cir. 1979) (per curiam), *cert. denied*, 444 U.S. 969, 100 S. Ct. 461 (1979). Here, evidence of Ailer's wages being garnished just a week prior to the burnisher incident occurred is evidence of Ailer's motive to commit theft. This is not to say that every person in debt has a motive to commit theft. Our holding is narrow to the specific facts of this case.

¶22 This Court has established that even if evidence of a prior bad act is admissible, it may be excluded if "the nature of the evidence might tempt the jury to decide the case against the defendant on an improper propensity basis." *State v. Franks*, 2014 MT 273,

10

¶ 15, 376 Mont. 431, 335 P.3d 725 (quoting *State v. Stewart*, 2012 MT 317, ¶ 62, 367 Mont. 503, 291 P.3d 1187). Considering a point made by Ailer in his appellate brief that many Americans possess debt, it is unlikely that a jury would conclude that Ailer "had defrauded credit card companies and so defrauded the State Fund in a similar way." The unlikelihood of this impropriety is supported by the manner in which evidence of Ailer's debt was presented during trial. The State did not use the evidence of Ailer's wage garnishment to characterize him as dishonest or untruthful such as Ailer suggests. The State established the fact that Ailer was in "substantial" debt and noted the day Miller told Ailer that Ailer's wages would be garnished. Evidence of Ailer's wage garnishment was logically used to establish motive.

¶23 The District Court concluded that the prejudicial effect of the evidence did not outweigh its probative value. The prejudicial effect of evidence of other crimes, wrongs, or acts will substantially outweigh its probative value if the jury is prompted to decide the case on an improper basis. *State v. Southern*, 1999 MT 94, ¶ 39, 294 Mont. 225, 980 P.2d 3. However, evidence of other crimes, wrongs, or acts will always have some prejudicial effect on a criminal defendant. *Southern*, ¶ 38. The State's use of Ailer's wage garnishment was probative in establishing his motive to pose the burnisher incident and did not unfairly prejudice Ailer. The District Court did not abuse its discretion when it found that Ailer's wage garnishment was admissible evidence pursuant to M. R. Evid. 404(b).

11

¶24    *3. Whether the District Court had substantial evidence to support its restitution order.*

¶25    If a victim suffers a pecuniary loss as a result of a criminal offense, the sentencing court must order the offender to pay restitution. Section 46-18-201(5), MCA. The District Court found that the total amount of loss incurred by the State Fund as a result of Ailer's actions was $64,025.34. Taking into account statutory and administration fees, the District Court ordered Ailer to pay restitution in the amount of $70,680.34. Ailer alleges the District Court erred when it awarded restitution without substantial evidence supporting the State Fund's pecuniary loss. Ailer relies on two cases previously decided by this Court: *State v. Aragon*, 2014 MT 89, 374 Mont. 391, 321 P.3d 841, and *State v. Coluccio*, 2009 MT 273, 352 Mont. 122, 214 P.3d 1282. However, these cases are materially different from the present case.

¶26    In *Aragon*, there were two estimates as to the damages and restitution amount, which were "entirely devoid of context or explanation about the difference between the two." *Aragon*, ¶ 17. No witnesses testified before the district court as to the amount lost. This Court held that without any testimony or other evidence to explain the different estimates, neither estimate was supported by substantial evidence. Here, the District Court heard testimony from Suzanna Simmons, a former claims examiner for State Fund, who provided an in-depth explanation of the amounts State Fund paid out to Ailer after his second claim for workers' compensation was filed. The documents Simmons used to calculate the State's proposed restitution amount were admitted into evidence as exhibits

12

during the sentencing hearing, further explaining what was paid out to Ailer and when it was paid out.

¶27 In *Coluccio*, this Court concluded that testimony by the decedent's wife who estimated counseling expenses, made assumptions about future home repair costs, and gave her husband's potential earning capacity did not constitute substantial evidence of the restitution amount without further support. Ailer argues that like the decedent's wife in *Coluccio*, the State's restitution witness muddled her calculations. Ailer alleges that Simmons failed to concretely distinguish between the payments State Fund made regarding Ailer's first claim in May 2011 and his second claim in October 2011. Ailer alleges some of the medical benefits paid to Ailer should relate back to his May 2011 claim, which would reduce the overall restitution amount awarded by the District Court.

¶28 Simmons affirmed numerous times throughout the sentencing hearing that her calculations related strictly to Ailer's second workers' compensation claim, which had a different claim number than his first claim. Simmons emphasized the fact that Ailer was released back to full duty on October 4, 2011, which was thirteen days before he filed the burnisher claim. In Simmons' opinion, Ailer's release date separated his claims and the correlating benefit payments from State Fund. Simmons also noted her reliance as a claims examiner on what Ailer told his doctors about his injury. Based on these and other key pieces of information, Simmons testified that the money paid out to Ailer related to injuries sustained from the burnisher incident, and not injuries sustained from his May 2011 accident and claim. Substantial evidence was admitted to support the District Court's restitution award.

**CONCLUSION**

¶29 The District Court did not err when it denied Ailer's ineffective assistance of counsel claim. Ailer has not satisfied his burden to establish that he was prejudiced by his trial counsel's actions. The District Court did not err when it admitted evidence of Ailer's debt and wage garnishment as motive evidence under M. R. Evid. 404(b). Substantial evidence supports the District Court's restitution order.

¶30 Affirmed.

/S/ MIKE McGRATH

We Concur:

/S/ LAURIE McKINNON
/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER
/S/ DIRK M. SANDEFUR