FILED

02/06/2024

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 22-0429

DA 22-0429

IN THE SUPREME COURT OF THE STATE OF MONTANA

2024 MT 20

DUANE BURCHILL,

       Petitioner and Appellant,

   v.

STATE OF MONTANA,

       Respondent and Appellee.

APPEAL FROM:   District Court of the Eighteenth Judicial District,
In and For the County of Gallatin, Cause No. DV-20-302(A)
Honorable Peter B. Ohman, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

      Joseph P. Howard, Joseph P. Howard, P.C., Helena, Montana

      For Appellee:

      Austin Knudsen, Montana Attorney General, Mardell Ployhar,
Assistant Attorney General, Helena, Montana

      Audrey Cromwell, Gallatin County Attorney, Bozeman, Montana

Submitted on Briefs:  November 29, 2023

Decided:  February 6, 2024

Filed:

_____
Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1      Duane Burchill appeals the order of the Montana Eighteenth Judicial District Court, Gallatin County, denying his amended petition for postconviction relief. Burchill asserts that his counsel provided ineffective assistance when he failed to object to the prosecutor's misconduct. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2      Burchill was convicted in 2017 of two counts of robbery, one count of conspiracy to commit deceptive practices, and one count of possession of dangerous drugs. Burchill's retained trial counsel, Jack Sands, represented him on appeal. Burchill raised four issues on appeal: (1) that cell phone evidence was improperly admitted; (2) that the search of his home was illegal; (3) that the search of his truck was illegal; and (4) that evidence of the handgun should not have been admitted due to foundational issues. We affirmed Burchill's conviction. *State v. Burchill*, 2019 MT 285, ¶ 39, 398 Mont. 52, 454 P.3d 633. Burchill subsequently filed a pro se petition for postconviction relief. The District Court appointed counsel, and Burchill filed an amended petition alleging ineffective assistance of trial counsel for Sands's failure to object to prosecutorial misconduct during Burchill's cross-examination. We restate the facts below only as necessary to resolve the denial of Burchill's postconviction petition.

¶3      The Magic Diamond II Casino in Bozeman was robbed on the night of September 18, 2016, and again the night of September 24, 2016. The individual who

committed the two robberies wore a Jack Skellington[1] mask and brandished a .380 caliber semi-automatic handgun. Witnesses to both robberies described the suspect as difficult to understand and speculated that he either had an accent or had taken steps to modify his voice. The suspect stole $585 during the first robbery and $899 during the second robbery. After the first robbery, law enforcement used a canine to track the suspect. The canine tracked the suspect to an area northwest of the casino in the Babcock Vista trailer court.

¶4 After the second robbery, law enforcement learned of informant Joshua Martz, who was arrested on unrelated charges in the days between the two robberies. Martz identified Burchill as the suspect of the robberies and said that he unknowingly became the getaway driver after the first robbery when he picked up Burchill in the trailer court where the canine lost the trail. Martz reported that Burchill had nearly $600 in cash and a Jack Skellington mask. Martz told law enforcement that Burchill likely would store the mask at Burchill's residence or in a storage tote in the bed of his truck. The information regarding the canine track and amount of money stolen from the casino had not been publicly released, indicating that Martz could not have known the information unless he was involved.

¶5 Law enforcement later located the mask in a locked tote in the bed of Burchill's truck. A .380 caliber semi-automatic handgun hidden inside a rubber glove also was found within the middle paneling of Burchill's truck. DNA recovered from swabs taken from the mask and the glove matched Burchill's DNA. Drug paraphernalia seized from Burchill's truck tested positive for methamphetamine.

---

[1] Jack Skellington is the main character in the animated motion picture, *The Nightmare Before Christmas* (Walt Disney Pictures (1993)).

¶6 At trial, Lindsey Lang testified that she met Burchill a few weeks prior to the first robbery. Lang said that Burchill was in a "desperate place" in the weeks before the first robbery and that he had posed to her a "hypothetical-type" question about committing a robbery with him. Lang stated that Burchill asked her how she would feel about "being the driver."

¶7 Martz testified that Burchill arranged for the two to meet in the trailer court behind the mall the night of the first robbery. According to Martz, Burchill came up to Martz's vehicle with "a mask rolled up in one hand and money in his left hand." Martz stated that Burchill provided him with approximately $500 to go buy methamphetamine for the two of them. Martz also testified that he had waited in the truck while Burchill went into Bob Wards and purchased "3800" ammunition not long before the first robbery, and that Burchill sometimes would talk in a bizarre accent when he was high.

¶8 Burchill denied at trial that he committed the robberies. He testified that he was at the Bozeman Ponds until approximately 6:00 p.m. on the night of the first robbery. He then went to a different casino in the mall for about an hour and a half, after which he drove to Livingston to meet up with a man named David. Burchill said that he also was looking for Martz in Livingston because Martz owed him $800, but he was unable to find him. Burchill claimed he spent the evening before the second robbery in Livingston at the house of a man named Donovan and that he loaned Martz his truck that evening because Martz said that he would go get the money he owed Burchill. Burchill stated his truck was returned the next morning and that he was at home on the night of the second robbery.

¶9 Burchill stated on cross-examination, "I was set up, with a mask that I had, by Josh Martz." Burchill elaborated that he did not believe that Martz, or anyone he knew, took his mask and used it in the commission of the robbery. Rather, he asserted that Martz saw the robbery on the news, noticed that Burchill had the same mask, placed the mask inside the tote in Burchill's truck, and then placed locks on Burchill's tote to prevent Burchill from opening the tote. When the prosecutor inquired further about Martz's motive to frame Burchill, Burchill stated, "[Martz] not only wanted to get rid of me, he wanted to steal everything I had, apparently. I don't know."

¶10 The prosecutor asked Burchill about the ammunition found in his tote. Burchill denied going to Bob Wards and purchasing the ammunition. The prosecutor asked if Martz was "being untruthful" about the ammunition purchase, to which Burchill replied, "Yes." The prosecutor further inquired about the differences between Martz's and Burchill's testimony:

Prosecutor: Did you get in [Martz's] vehicle with a mask?

Burchill: No, sir.

Prosecutor: Did he purchase any drugs for you that night?

Burchill: No, sir.

Prosecutor: Did you go with him to Donovan's, in Livingston, that night?

Burchill: No, sir.

Prosecutor: Did he rip you off for drugs?

Burchill: No, sir.

5

Prosecutor: So all of that that Mr. Martz testified to was a complete fabrication?

Burchill: Yes, sir.

. . .

Prosecutor: Would you ever talk in weird accents?

Burchill: No.

Prosecutor: So that was also a lie from Mr. Martz?

Burchill: I would say 98 percent of what Josh Martz said was a lie, yes.

¶11 Burchill also denied speaking with Lang about committing a robbery. The following exchange occurred:

Prosecutor: But it is true that you talked to [Lang] about committing a robbery, correct?

Burchill: No.

Prosecutor: And it's also—so it's not correct then either that you asked her to be the getaway driver?

Burchill: No.

Prosecutor: So that was a complete fabrication from Lindsey Lang?

Burchill's counsel objected to the last question on the grounds that it misstated Lang's testimony. The Court sustained the objection. The prosecutor asked Burchill if he heard Lang's testimony regarding Burchill posing a hypothetical to her about committing the robberies. Burchill responded that he believed that Lang was referencing something else. The prosecutor then asked Burchill to verify if he had "ever talked to Ms. Lang about anything regarding a robbery or being a getaway driver?" Burchill responded, "I've never

6

talked to anybody about robbery . . . ." The prosecutor finished his questioning regarding Lang by asking Burchill if there was "any motive that you can think of that would make [Lang] come in here and lie about those things." Burchill responded, "I don't think that she necessarily lied."

¶12    The prosecutor also questioned Burchill about his testimony that he gave Martz permission to tell his probation officer that he worked for Burchill. The prosecutor asked, "So you told Martz that he could use you, basically as a lie to his probation officer because he was not working for you at the time, correct?" Burchill replied, "Well, technically, it's [a] little bit of a gray area. I wouldn't say it's, necessarily, a straight up lie because he was transitioning to potentially work with me . . . ." When the prosecutor asked whether it was a "combination of a lie and a half truth," the court sustained defense counsel's objection on the ground that it was argumentative.

¶13    The prosecutor asked Burchill about his claim that someone had planted items in one of the totes that was in the back of his truck. Burchill responded by alleging that people he was living with had stolen some of his possessions, and he complained that the detectives did not adequately investigate the theft of his belongings. Burchill discussed speaking to the detectives about that theft when they came to interview him about the robberies. Burchill stated, "And I talked to the detectives when they first came and seen me. Before I even could defend myself on anything else because I didn't have any of the details." Shortly thereafter, the prosecutor and Burchill had the following exchange:

> Prosecutor: You said that you needed the details to defend yourself, correct? You just stated that, correct?

7

Burchill: I didn't even know anything about it, no.

Prosecutor: But you stated that. You needed the details to defend yourself?

Burchill: Well, as far as having conversation, I did, yes. There's nothing I could really tell the detectives other than I was wondering about what got stolen from me because they did bring that up.

Prosecutor: You could just tell the truth, couldn't you? Or is this one of those gray areas?

Burchill: That these guys have been stealing from me?

Prosecutor: About defending yourself. You could just tell the truth.

Burchill: That's a whole other situation. I was talking about when they came and talked to me as far as what got stolen from me. As far as giving them any information about robbery, no, I had no information on that, so I couldn't talk to them, and I didn't.

¶14 Burchill's amended postconviction petition alleged ineffective assistance of counsel when Sands failed to object to the prosecutor's "were they lying" questions. Sands testified at an evidentiary hearing on the petition that he did not believe the prosecutor's "were they lying questions" were objectionable. Rather, Sands believed the questions about whether Martz was untruthful had "some probative value" because Burchill's testimony contradicted Martz's testimony. While Sands declined to use the word "lying" to describe Martz's testimony, he confirmed that the defense's "theory of the case was that [] Martz was being untruthful. [Martz] was doing this for benefits, and we had good solid evidence of that . . . ." Further, Sands commented that he lodged several objections during the trial, and he believed objecting too often may annoy the court and the jury.

8

¶15     The District Court concluded that Burchill's ineffective assistance of counsel claims were procedurally barred by § 46-21-105(2), MCA, because he did not raise those issues in his direct appeal. The court concluded further that, regardless of the procedural bar, Sands's performance was objectively reasonable and Burchill suffered no prejudice.

## STANDARDS OF REVIEW

¶16     We review the denial of a postconviction relief petition to determine whether the court's findings of fact are clearly erroneous and whether its conclusions of law are correct. *Whitlow v. State*, 2008 MT 140, ¶ 9, 343 Mont. 90, 183 P.3d 861 (citation omitted). Claims of ineffective assistance of counsel present mixed questions of law and fact, which we review de novo. *Whitlow*, ¶ 9 (citation omitted).

## DISCUSSION

¶17     We address briefly the District Court's conclusion that because counsel Sands failed to object to the "were they lying" line of questions, Burchill's ineffective assistance of counsel claim was record-based and thus procedurally barred in postconviction relief, as it could have been raised on appeal. *See* § 46-21-105(2), MCA ("When a petitioner has been afforded the opportunity for a direct appeal of the petitioner's conviction, grounds for relief that were or could reasonably have been raised on direct appeal may not be raised, considered, or decided in a proceeding brought under this chapter."). The State agrees that Burchill's claim is appropriate to address on the merits under our precedent in *State v. Webster*, 2005 MT 38, 326 Mont. 112, 107 P.3d 500. We accordingly turn to the merits of Burchill's ineffective assistance of counsel claim.

9

¶18 The right to counsel in criminal prosecutions is guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and by Article II, Section 24 of the Montana Constitution. *Whitlow*, ¶ 10. In assessing claims of ineffective assistance of counsel, we apply the two-pronged test articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984). *Whitlow*, ¶ 10. The petitioner must show that counsel's performance was deficient and that counsel's deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064. Under the first prong, the defendant must prove that his "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Whitlow*, ¶ 10 (quoting *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064). To evaluate a claim of deficiency, "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Whitlow*, ¶ 14 (quoting *Strickland*, 466 U.S. at 688, 104 S. Ct. at 2065). The second prong requires that the defendant "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Bomar v. State*, 2012 MT 163, ¶ 8, 365 Mont. 474, 285 P.3d 396 (quoting *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068).

¶19 "Misconduct by a prosecutor may form the basis for granting a new trial where the prosecutor's actions have deprived the defendant of a fair and impartial trial." *Clausell v. State*, 2005 MT 33, ¶ 11, 326 Mont. 63, 106 P.3d 1175 (citing *State v. Gray*, 207 Mont. 261, 266-67, 673 P.2d 1262, 1265-66 (1983)). Burchill argues the prosecutor committed misconduct on two grounds: (1) the prosecutor repeatedly asked Burchill to comment on the credibility of other witnesses by asking "were they lying" questions; and (2) the

10

prosecutor posed questions evincing his personal opinion that Burchill's testimony was not truthful. Sands's failure to object to such questions, Burchill alleges, constitutes deficient performance that prejudiced Burchill's defense, which entitles him to a new trial.

¶20 First, Burchill argues that the prosecutor impermissibly pressed Burchill at trial to testify to the credibility of Martz and Lang.[2] Burchill contends that the prosecutor's "were they lying" questions were improper because they had no probative value.

¶21 We have declined to adopt a bright-line rule whether a prosecutor may ask a defendant "were they lying" questions when the defendant's testimony contradicts that of a witness. *See State v. Hart*, 2000 MT 332, ¶ 43, 303 Mont. 71, 15 P.3d 917; *accord Webster*; ¶ 15; *State v. Ailer*, 2018 MT 18, ¶ 16, 390 Mont. 200, 410 P.3d 964. Some jurisdictions hold that such questions are always improper; other jurisdictions hold that they are always proper. *Hart*, ¶ 37 (citations omitted). Others follow a middle ground, holding that the permissibility depends on the circumstances. *Hart*, ¶ 37 (citations omitted). We adopted this approach in *Hart*. Generally, the rationale for refusing "were they lying" questions is that it impermissibly infringes upon the role of the jury to make credibility determinations. *Hart*, ¶ 38 (citations omitted). We reasoned, however, that "there may be circumstances in which 'were they lying' questions have probative value in clarifying a particular line of testimony, in evaluating the credibility of a defendant who is claiming that everyone else is lying, or when a witness flatly denies the occurrence of events." *Hart*, ¶ 40 (citing *State v. Pilot*, 595 N.W.2d 511, 518 (Minn. 1999)).

---

[2] Burchill has abandoned on appeal his claim that Sands was ineffective for failing to object when the prosecutor asked Burchill whether witness Hazal Evans was lying.

11

¶22    The State's use of the "were they lying" questions here closely resembles that in *Hart*. In that case, the victim and two other witnesses testified that the defendant hit the victim in the head and shoulders several times with a cattle prod. *Hart*, ¶ 11. On direct examination, the defendant testified that it was actually the victim in possession of the cattle prod and she had come at him with the cattle prod in hand. *Hart*, ¶ 14. The defendant claimed he injured the victim in self-defense. *Hart*, ¶ 14. On cross-examination, the prosecutor asked the defendant if the victim and other two witnesses "were lying" when they testified that it was the defendant in possession of it, to which the defendant responded affirmatively. *Hart*, ¶ 14. We held that the questions did not infringe upon the jury's role in making determinations of witness credibility because the only important distinction between the defendant's testimony and the victim's testimony was that each witness claimed the other one committed the crime. *Hart*, ¶ 39.

¶23    Burchill urges the Court to distinguish *Hart* because whether Burchill asked Lang about possibly committing a robbery and whether Burchill purchased ammunition from Martz were circumstantial and not the "central issue[s]" of the case. The State responds that to reach a verdict, it was necessary for the jury to determine whether Martz's testimony or Burchill's testimony was accurate. Like in *Hart*, the State argues, the questions posed by the prosecutor focused the jury's attention on the credibility determination, which was the central issue of the case. *Hart*, ¶ 44.

¶24    Burchill further attempts to distinguish *Hart* in asserting that, unlike in *Hart*, it cannot be said that the "only explanation" for the difference between Burchill's testimony and that of Martz and Lang was that "somebody was lying." *See Hart*, ¶ 44. Burchill

12

points to *Pilot*, which we cited in *Hart*, where the Minnesota Supreme Court stated that "were they lying" questions may be permissible when the defendant creates a credibility contest by "flatly den[ying] the occurrence of events" in "circumstances that exclude the possibility that the prosecution's witnesses may have been mistaken or testified to events based on assumptions or a faulty memory[.]" *Pilot*, 595 N.W.2d at 517. Because Martz admitted that he struggled to recall the "chronology of events" during the time frame at issue and Lang "was less than a sure historian in terms of recalling dates" in her testimony, Burchill argues that the District Court wrongly "ignored these innocent explanations" for differences in their testimony.

¶25 Like in *Hart*, though, the only explanation for the discrepancies between the defendant's and witness's testimony was that either the defendant or the witness was lying. *Hart*, ¶ 44. Burchill's testimony that he had never had a conversation with Lang about a robbery was directly contrary to Lang's testimony that Burchill had posed a hypothetical to her about committing a robbery. Martz testified that he picked Burchill up after the first robbery and that Burchill had money and the mask. Burchill, in contrast, testified that he was in a different county at that time and that Martz's version of events never occurred. Where a witness "flatly denies the occurrence of events[,]" we have held that "were they lying" questions have probative value. *Hart*, ¶ 40 (citing *Pilot*, 595 N.W.2d at 518). The central theme of Burchill's defense was that he was framed, particularly by Martz. Burchill and Martz's stories were diametrically opposed; only one could be telling the truth. Burchill wanted the jury to believe that Martz made up a story to get Burchill so he could get favorable treatment in his own case.

13

¶26 The principal issue was the credibility of the witnesses because the jury needed to have reasonable doubt regarding Martz's and Lang's credibility to find Burchill not guilty. *See Ailer*, ¶ 16. "In either situation, the jury must still decide which witness is more credible." *Hart*, ¶ 39. The District Court therefore correctly concluded that the questions were appropriate and that Sands's decision not to object was reasonable because the objection likely would not have been sustained. Sands made appropriate strategic objections during Burchill's cross-examination, which the court sustained. He was not deficient for declining to object to the prosecutor's "were they lying" questions because the questions were permissible under our precedent.

¶27 Burchill next argues the prosecutor committed misconduct when he asked Burchill on cross-examination, "You could just tell the truth, couldn't you?" According to Burchill, this question implied the prosecutor's personal belief that Burchill had not yet told the truth regarding his involvement in any of the crimes charged.

¶28 It is improper for a prosecutor to offer personal opinions on a witness's credibility. *State v. Hayden*, 2008 MT 274, ¶ 28, 345 Mont. 252, 190 P.3d 1091 (citations omitted). When evaluating claimed prosecutorial misconduct, the questions or argument must be analyzed "in the context of the entire argument." *State v. McDonald*, 2013 MT 97, ¶ 14, 369 Mont. 483, 299 P.3d 799 (quoting *State v. Makarchuk*, 2009 MT 82, ¶ 24, 349 Mont. 507, 204 P.3d 1213).

¶29 Evaluating the entire context of the prosecutor's line of questioning, we agree with the District Court that the prosecutor did not express his personal opinion whether Burchill was telling the truth. The prosecutor asked the question in response to Burchill's statement

14

that he met with detectives "[b]efore I even could defend myself on anything else because I didn't have any of the details." As the District Court found, this line of questioning did not imply the prosecutor's opinion, but rather "quer[ied] [Burchill] on why he would need advanced information in order to give a truthful statement." Because the prosecutor did not voice his personal opinion on Burchill's credibility, the District Court correctly concluded that Sands was not deficient for failing to object to the question.

¶30 Sands's performance was not deficient for failing to make objections. The prosecutor's questions were within the scope of permissible questions allowed on cross-examination. As such, Sands's representation did not fall below an objective standard of reasonableness under *Strickland*. We therefore need not address whether Burchill was prejudiced by the failure to object.

## CONCLUSION

¶31 We affirm the District Court's denial of Burchill's petition for postconviction relief.


/S/ BETH BAKER

We Concur:

/S/ JAMES JEREMIAH SHEA
/S/ LAURIE McKINNON
/S/ DIRK M. SANDEFUR
/S/ JIM RICE

15